UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELO JOHNSON,

                                    Plaintiff,
                                                              9:11-CV-0531
v.                                                            (MAD/TWD)

MICHAEL A. SCHIFF,[1] LT. WILLIAM DEVITO,
THOMAS LOUGHERN, SGT. FRIOT, SGT. SHOALE,
SGT. RYAN, C.O. CHESEBRO, C.O. MOSCATO,
C.O. ALEMAR, C.O. ROTUNDO, C.O. DEMUN,
C.O. PARKER, C.O. LACOTTA, C.O. JOHN DOE,
R.N. JOANNE LOCKE, C.O. HACKETT,
LT. SCHULT,

                                    Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

ANGELO JOHNSON
Plaintiff pro se
Sullivan County Jail
4 Bushnell Avenue
Monticello, NY 12701

SULLIVAN COUNTY ATTORNEY'S OFFICE         SAMUEL S. YASGUR, ESQ.
Counsel for Defendant Michael A. Schiff
100 North Street
Monticello, NY 12701

DREW, DAVIDOFF & EDWARDS                   MICHAEL DAVIDOFF, ESQ.
Counsel for Defendant William DeVito
13 Liberty Street
P.O. Drawer 1040
Monticello, NY 12701

---

[1]     This defendant is currently listed on the docket as "Michael A. Schriff."  In his moving papers, this defendant spells his surname "Schiff."  The Clerk is directed to correct the caption to list this defendant as "Michael A. Schiff."

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**REPORT-RECOMMENDATION and ORDER**

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Angelo Johnson claims that Defendants violated his constitutional rights by transferring him from the Sullivan County Jail to the Chenango County Jail, where he was subjected to excessive force and inadequate medical care. Currently pending before the Court are two motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.[2] (Dkt. Nos. 120 and 122.) Also pending is Plaintiff's motion to strike portions of a reply brief. (Dkt. No. 136.) For the reasons discussed below, I recommend that the Court (1) grant Defendant Schiff's motion for summary judgment and terminate him from this action; (2) deny Plaintiff's motion to strike; (3) deny Defendant DeVito's motion for summary judgment; and (4) sua sponte dismiss the official capacity claim against Defendant DeVito.

## I. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff alleges that during the summer of 2007, he was assaulted by staff at the Chenango County Jail. (Dkt. No. 120-5 at 60:9-14.) He alleges that the staff threatened him that if he ever returned to the facility, "there was going to be a problem." (Dkt. No. 117-3 at 43:10-44:10.)

By May 2008, Plaintiff was a pretrial detainee housed at the Sullivan County Jail. (Dkt.

---

[2]     A third motion for summary judgment, filed by the Chenango County Defendants, is also pending. (Dkt. No. 117.) The Court will issue a decision on that motion in a separate Report-Recommendation.

No. 93 ¶ 3.)  The Sullivan County Jail is operated in conformity with the rules, regulations, and directives of the New York State Commission of Corrections ("COC").  (Dkt. No. 122-2 ¶ 7; Dkt. No. 129 ¶ 7.[3])  The COC mandates a maximum number of inmates that can be housed at the Sullivan County Jail at any given time.  (Dkt. No. 122-2 ¶ 9; Dkt. No. 129 ¶ 9.)  Occasionally, the Sullivan County Jail must temporarily transfer inmates to another facility in order to remain under the population cap imposed by the COC.  (Dkt. No. 122-2 ¶ 10; Dkt. No. 129 ¶ 10.)  Any temporary transfer of any inmate from Sullivan County Jail to another facility must be approved in advance by the COC.  (Dkt. No. 122-2 ¶ 11; Dkt. No. 129 ¶ 11.)  On April 28, 2008, the COC issued an order designating the "Chenango County Jail as a substitute jail for the Sullivan County Jail for the confinement of unsentenced males."  (Dkt. No. 122-2 ¶ 14; Dkt. No. 129 ¶ 14.)

On May 9, 2008, Plaintiff was informed by non-defendant Corporal Ciangelo that he was going to be moved from the Sullivan County Jail to the Chenango County Jail.  (Dkt. No. 93 ¶ 30.)  Plaintiff asked Corporal Ciangelo and non-defendant Sergeant Danzer "not to transfer him out, noting that he . . . had previous problems at Chenango County and feared for his personal health and safety to say the very least, due to prior conflicts between [P]laintiff and correctional staff at that facility."  *Id.* ¶ 31.

At his deposition, Plaintiff testified that when he told Sergeant Danzer that he feared for his safety if he was transferred to the Chenango County Jail, Sergeant Danzer said "All I can do is . . . bring it to [Defendant] Lieutenant DeVito's attention because he's . . . the only one that can

---

[3]	Plaintiff does not explicitly either admit or deny this fact, or any of the facts cited in this paragraph, in his opposition statement of material facts.  Rather, he merely "asserts that the materials cited by the defendants do not establish the absence of a genuine dispute of fact." (Dkt. No. 129 ¶¶ 7, 9-11, 14 (punctuation omitted).)

stop the movement now." (Dkt. No. 117-3 at 41:23-42:2;[4] Dkt. No. 128 ¶ 19.)  Plaintiff testified

that after this conversation, he called his attorney.  (Dkt. No. 117-3 at 42:6.)  Plaintiff testified

that his attorney told him that he had spoken to Defendant DeVito and relayed Plaintiff's fears,

but that "DeVito was not gonna stop the move."  *Id*. at 42:10-13.  A few minutes after Plaintiff

got off the phone, Sergeant Danzer informed him that "DeVito is not gonna stop the movement."

*Id*. at 43:5-6.

Plaintiff was transferred to the Chenango County Jail that day.  (Dkt. No. 122-2 ¶ 18;

Dkt. No. 129 ¶ 18.)  Plaintiff testified that he saw Defendant DeVito as he was being transferred,

told him that he was "in great fear of my safety and health," and asked him not to transfer him.

(Dkt. No. 117-3 at 44:5-10.)  Plaintiff testified that Defendant DeVito did not say anything.  *Id*. at

44:10.  Plaintiff believed that Defendant DeVito was aware of Plaintiff being assaulted in 2007 at

the Chenango County Jail because, although Plaintiff never discussed it with him personally,

New York regulations "require that all incident reports [be] recorded and . . . the administration

should be aware, at least have constructive knowledge."  (Dkt. No. 120-5 at 59:21-60:8.)

Plaintiff alleges that he was subjected to excessive force and denied medical care on May

10, 2008, at the Chenango County Jail.  (Dkt. No. 93 ¶¶ 38-55.)

Plaintiff filed the original complaint in this action on May 11, 2011.  (Dkt. No. 1.)  The

operative pleading is the amended complaint.  (Dkt. No. 93.)  Defendants answered the amended

complaint.  (Dkt. Nos. 100, 104, and 105.)  Defendants now move for summary judgment.  (Dkt.

Nos. 120 and 122.)  Plaintiff has opposed the motions.  (Dkt. Nos. 128 and 129.)  Defendants

---

[4]       References to page numbers in citations to Plaintiff's deposition transcript refer to
the page numbers in the original document rather than to the page numbers assigned by the
Court's electronic filing system.

4

have filed replies.  (Dkt. Nos. 132, 134.)  Plaintiff moves to strike portions of Defendant Schiff's reply.  (Dkt. No. 136.)  Defendant Schiff has opposed the motion to strike.  (Dkt. No. 138.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Id*. at 273.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 & n.11 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[5] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

---

[5]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

### B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not

shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.   DEFENDANT SCHIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANT SCHIFF'S REPLY BRIEF

### A.   Motion for Summary Judgment

Plaintiff alleges that Defendant Michael A. Schiff, the Sheriff of Sullivan County, failed to protect Plaintiff from harm by transferring Plaintiff to the Chenango County Jail. (Dkt. No. 93 ¶¶ 4, 86.) Plaintiff has sued Defendant Schiff in both his individual and official capacities. *Id.* ¶ 4. Defendant Schiff moves for summary judgment in his favor, arguing that (1) he was not personally involved in any of the alleged constitutional violations; and (2) Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 122-1.) I will address only Defendant Schiff's personal involvement argument, as it is dispositive. In addition, I will discuss Plaintiff's official capacity claim, which Defendant Schiff's memorandum of law does not explicitly address.

1.    Individual Capacity Claim: Personal Involvement

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[6]

---

[6]    In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of

Defendant Schiff declares that there are three units within his office: the patrol unit, the civil unit, and the jail unit. (Dkt. No. 122-3 ¶ 5.) The jail unit is responsible for operating the Sullivan County Jail. *Id.* ¶ 8. Colonel Harold L. Smith, Jr., as Jail Administrator, holds the top management position in the jail unit. *Id.* ¶¶ 10-11. Defendant Schiff has regular meetings with the Jail Administrator, but is not involved in the day-to-day operation of the jail. *Id.* ¶ 12. He is not involved in decisions relating to the "outboarding" of inmates to another jail. *Id.* Those decisions are made by the Jail Administrator, his administrative staff, and correction officers. *Id.* ¶ 14. Defendant Schiff declares that he was not personally involved in any aspect of Plaintiff's temporary transfer to the Chenango County Jail. *Id.* ¶ 18. Rather, Plaintiff's transfer "was handled as a routine matter by the staff, supervisors and administrators of the Sullivan County Jail." *Id.*

Plaintiff argues that Defendant Schiff was personally involved because (1) he had the "ultimate responsibility of duty to train, instruct, supervise and control his subordinates;" (2) there is "a genuine issue as to whether a special relationship existed between Plaintiff and defendants and whether defendants w[ere] aware that Plaintiff was in 'special danger' from the Chenango County officials;" and (3) he failed to "establish and issue any doctrine or regulations

---

subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("Although the Supreme Court's decision in . . . *Iqbal* . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal*'s impact on *Colon* in this case . . . ."); *Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon* . . . . But the fate of *Colon* is not properly before us . . . ."). Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this motion that *Colon* remains good law.

concerning transfer policy and emergency response; and failed to properly instruct his subordinates with regard thereto." (Dkt. No. 129-1 at 8-11.[7])

Defendant Schiff's declaration establishes that he was not personally involved in Plaintiff's transfer from the Sullivan County Jail to the Chenango County Jail. Plaintiff's arguments are not supported by any evidence. Plaintiff, therefore, has not raised a triable issue of fact as to Defendant Schiff's personal involvement. Therefore, I recommend that the Court grant Defendant Schiff's motion for summary judgment and dismiss the claims against him in his individual capacity.

2.    Official Capacity Claim

Plaintiff has also sued Defendant Schiff in his official capacity. (Dkt. No. 93 ¶ 4.) Plaintiff's official capacity claim against Defendant Schiff is, essentially, a claim that Defendant Schiff failed to train his subordinates to take inmates' concerns into account before transferring them out to other facilities. (Dkt. No. 129-1 at 8-11.) Defendant Schiff has not explicitly addressed this claim.

> A claim under § 1983 asserted against a municipality must allege that a deprivation of the plaintiff's constitutional rights resulted from a custom or policy of the municipality. Such a claim cannot be based on a theory of respondeat superior. Additionally, there must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself.

*Perez v. Cnty. of Westchester*, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000) (citations and punctuation omitted).

---

[7]    Page numbers in citations to Plaintiff's opposition memorandum of law refer to the page numbers assigned by the Court's electronic filing system.

A local government entity's alleged failure to train its employees creates liability under § 1983 only "[i]n limited circumstances." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). Indeed, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. The "stringent standard" of deliberate indifference applies to failure-to-train claims. *Id*. at 1360. In order to prevail, the plaintiff must demonstrate that the municipality was "on actual or constructive notice that a particular omission in [its] training program causes . . . employees to violate citizens' constitutional rights [and] the policymakers chose to retain that program." *Id*. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*.

Here, Plaintiff has not provided the Court with any evidence that Defendant Schiff (in his official capacity) was on actual or constructive notice that any failure to train jail employees to take inmates' concerns into account before transferring them led to any violation of constitutional rights. Thus, Plaintiff has not raised a triable issue of fact regarding his official capacity claim against Defendant Schiff. Therefore, I recommend that the Court dismiss Plaintiff's official capacity claim against Defendant Schiff.

### B.    Motion to Strike Portions of Reply Brief

Defendant Schiff filed a reply brief regarding his motion for summary judgment along with a supporting declaration from Jail Administrator Harold L. Smith. (Dkt. Nos. 134, 134-2.) The reply brief reiterates Defendant Schiff's arguments that he is entitled to summary judgment because he was not personally involved in Plaintiff's transfer and because Plaintiff failed to

exhaust his administrative remedies.  (Dkt. No. 134 at 1-3.[8])  The brief also responds to

Plaintiff's argument regarding customs, policies, and procedures.  *Id*. at 3-4.  The Smith

Declaration reiterates, in somewhat more detail, the information contained in the declaration that

Mr. Smith filed with Defendant Schiff's moving papers.  (Dkt. No. 134-2.)

Plaintiff moves to strike the memorandum of law and the Smith Declaration,

characterizing them as an "ambush" raising arguments that "should have been raised in

connection with moving defendants' motion in chief."  (Dkt. No. 136 at 1.)  Plaintiff is correct

that "new arguments may not be made in a reply brief."  *Ernst Haas Studio, Inc. v. Palm Press,*

*Inc.*, 164 F.3d 110, 112 (2d Cir. 1999).  However, "reply papers may properly address issues

raised in the opposition papers so as to avoid giving unfair advantage to the answering party."

*Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000).

Here, the reply brief and the Smith Declaration reiterate arguments made in the moving papers

regarding personal involvement and the exhaustion of administrative remedies and respond to

Plaintiff's arguments regarding customs and policies.  Accordingly, the documents were properly

filed.  Therefore, I recommend that the Court deny Plaintiff's motion to strike.

## IV.     DEFENDANT DEVITO'S MOTION FOR SUMMARY JUDGMENT

The complaint alleges that Defendant DeVito was aware of Plaintiff's fear for his

personal safety and yet ordered that Plaintiff be moved to Chenango County.  (Dkt. No. 1 ¶ 34.)

Plaintiff alleges that Defendant DeVito was deliberately indifferent to Plaintiff's health and

safety.  *Id.* ¶ 67.  The caption of the operative complaint states that Defendant DeVito is being

---

[8]        Page numbers in citations to Defendant Schiff's reply memorandum of law refer
to the page numbers in the original document rather than to the page numbers assigned by the
Court's electronic filing system.

sued in his individual and official capacities. (Dkt. No. 93 at 1.) However, under the list of parties, the operative complaint states that Defendant DeVito "is being sued in his official capacity" and does not mention individual capacity. *Id.* ¶ 5. This Court has previously ruled that the operative complaint is asserted against Defendant DeVito in both his official and individual capacities. (Dkt. No. 92 at 11.)

Defendant DeVito argues that he is entitled to summary judgment in his favor because: (1) the action is barred by the applicable statute of limitations; (2) Plaintiff failed to exhaust his administrative remedies; (3) he was not personally involved in the decision to transfer Plaintiff; and (4) even if he was personally involved, there is no evidence that he was deliberately indifferent to a substantial risk to Plaintiff's safety. (Dkt. No. 120-13.) For the reasons discussed below, I find that Defendant DeVito has not demonstrated that he is entitled to summary judgment on any of these grounds. However, addressing the matter sua sponte, I do find that Defendant DeVito is entitled to summary judgment dismissing the claim against him in his official capacity.

### A.     Statute of Limitations

Defendant DeVito argues that Plaintiff's claim against him must be dismissed because it was not commenced within the statute of limitations. (Dkt. No. 120-13 at 11-12.[9]) Defendant's argument disregards the "prison mailbox rule" and is thus without merit.

Claims arising under 42 U.S.C. § 1983 are governed by state statutes of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266-267 (1985). In New York, such claims are governed by the

---

[9]     Page numbers in citations to Defendant DeVito's memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

general three-year limitations period governing personal injury claims. *Owens v. Okure*, 488 U.S. 235, 251 (1989). Accrual of the claim, however, is a question of federal law. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). Under federal law, generally, a claim arising under 42 U.S.C. § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

The prison mailbox rule provides that a pro se complaint submitted by a prisoner is deemed "filed" at the time it was delivered to "prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). *See also Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). The date that a complaint is signed is the date that the prisoner is presumed to have handed that complaint to a prison guard for mailing. *See Shaw v. Superintendent*, No. 03–CV–0610 (NPM), 2007 U.S. Dist. LEXIS 22460, at * 9 n.3, 2007 WL 951459, at * 3 n.3 (N.D.N.Y. Mar. 28, 2007) (habeas corpus proceeding); *Garraway v. Broome Cnty.*, No. 03–CV–0681, 2006 U.S. Dist. LEXIS 17563, at *9, 2006 WL 931729, at *3–4 (N.D.N.Y. Apr.7, 2006) (McAvoy, J.) (prisoner civil rights action).[10]

Here, Plaintiff's claim against Defendant DeVito accrued on May 9, 2008. The statute of limitations thus expired on May 9, 2011. Plaintiff signed his original complaint on April 23, 2011. (Dkt. No. 1 at 22.) Plaintiff asserts in opposition to Defendant DeVito's motion for summary judgment that he delivered the original complaint to prison officials on May 6, 2011. (Dkt. No. 128-1 at 8.) Under the prison mailbox rule, Plaintiff's original complaint was filed within the statute of limitations. This Court has ruled that the operative complaint's claims

---

[10]     The Court will provide Plaintiff with a copy of all unpublished decisions cited in this Report-Recommendation in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

against Defendant DeVito relate back to the filing of the original complaint. (Dkt. No. 92 at 11.) Accordingly, the operative complaint is not barred by the applicable statute of limitations by operation of the prison mailbox rule. Therefore, I recommend that the Court reject Defendant DeVito's statute of limitations argument.[11]

**B.      Exhaustion of Administrative Remedies**

Defendant DeVito argues that Plaintiff's claims against him should be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 120-13 at 13-18.) I find that Plaintiff has raised a triable issue of fact that his failure to exhaust should be excused due to special circumstances. Accordingly, I recommend that the Court reject Defendant DeVito's argument and set this matter for an evidentiary hearing on the issue of exhaustion.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined.

---

[11]      Defendant DeVito argues, without citation to authority, that the prison mailbox rule should not apply because "since plaintiff did have contact with counsel he was not dependent on the prison mail system." (Dkt. No. 132 at 8.) Plaintiff has proceeded pro se in this case from its inception and has never been represented by counsel in this matter. Thus, the prison mailbox rule is applicable.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies.  *Woodford*, 548 U.S. at 93.

The Sullivan County Jail has a grievance procedure.  (Dkt. No. 120-8 ¶ 19.)  Under the procedure, inmates must first attempt to informally resolve any grievance with their housing area officer.  (Dkt. No. 120-12.)  If the issue cannot be informally resolved, the inmate must ask in writing to be interviewed by the Grievance Coordinator or his assistant.  *Id*.  The Grievance Coordinator reviews the grievance and issues a written determination within five business days.  *Id*.  Within two days of receiving the Grievance Coordinator's decision, the inmate may appeal to the Jail Administrator.  *Id*.  The Jail Administrator must respond in writing within two business days of receiving the appeal.  *Id*.  Within three days of receiving the Jail Administrator's response, the inmate may appeal to the State Commission of Correction.  *Id*.  The Citizens' Policy and Complaint Review Council must issue a written determination within twenty business days of receiving the appeal.  *Id*.  The Sullivan County Jail's grievance procedure does not describe what inmates who are transferred to another facility before they are able to file a grievance must do in order to exhaust their administrative remedies.  *Id*.

Here, it is undisputed that Plaintiff did not exhaust the Sullivan County Jail grievance procedure.[12]  After his return to the Sullivan County Jail from the Chenango County Jail at the

---

[12]     Plaintiff filed a grievance in Chenango County requesting a transfer back to Sullivan County "so I can prepare and fight my case adequately."  (Dkt. No. 120-5 at 78:10-19.)  Plaintiff stated that he was "full of anguish, hostility and distress because of being denied the adequate tools to defend my innocence."  *Id*. at 78:14-16.  The grievance did not mention Plaintiff's claim that Defendant DeVito failed to protect him from harm by transferring him to the Chenango County Jail.

end of May 2008, Plaintiff filed a total of thirteen grievances.  (Dkt. No. 120-8 ¶ 24.)  None of those, however, involved the incident at the Chenango County Jail or Plaintiff's transfer to the Chenango County Jail.  *Id.*

Plaintiff's failure to exhaust, however, does not end the inquiry.  The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies.  *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[13]  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Id.* at 686 (citation omitted).   Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Id.* (citations omitted).  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."  *Id*. (citations and internal quotations omitted).

Addressing the second *Hemphill* factor first, Defendant DeVito preserved the exhaustion defense by pleading it in his answer.  (Dkt. No. 105 ¶¶ 131-35; *Jones*, 549 U.S. at 216; *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010).)  Defendant DeVito is not estopped from

_____

[13]     The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81.  *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

asserting the exhaustion defense because there is no evidence that he prevented Plaintiff from exhausting his administrative remedies. *Cf. Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison).

Regarding the first and third *Hemphill* factors, Plaintiff argues that he was not able to exhaust his administrative remedies at the Sullivan County Jail because he was transferred immediately and when he returned to the facility several weeks later the Grievance Coordinator told it was too late to file a grievance. (Dkt. No. 128-1 at 5.) As such, it is not clear that an administrative remedy was, in fact, available to Plaintiff. As noted above, the Sullivan County Jail's grievance procedure does not explicitly provide instructions for how to file a grievance if a prisoner is transferred out of the facility immediately after an allegedly grievable incident occurs. None of the evidence submitted by Defendant DeVito in support of his motion for summary judgment discusses this issue.

This lack of clarity about procedure can also be characterized as a special circumstance justifying Plaintiff's failure to exhaust. Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004). A lack of clarity regarding post-transfer grievance procedures has been found to raise a triable issue regarding justification. In *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422 (E.D.N.Y. 2010), the plaintiff was transferred from a county facility to a state facility two days after the incident that was the subject of his complaint. *Id*. at 427-28. The defendants argued that the complaint should be

dismissed because the plaintiff failed to exhaust his administrative remedies. The court noted that "many courts have found that where a plaintiff had an opportunity to meaningfully pursue [a] grievance while incarcerated at the facility where the grievance arose, the failure to exhaust those remedies was not excused by the plaintiff's transfer to a different facility." *Id.* at 433. But where a prisoner is transferred from a county facility to another facility shortly after an incident occurs, no meaningful opportunity to exhaust exists and the prisoner's failure to exhaust is justified within the meaning of *Hemphill*. *Id.* at 434-35. Finding that the plaintiff did not have a meaningful opportunity to exhaust, the court denied the defendants' motion for summary judgment. *Id.* at 441.

Here, Plaintiff has raised a triable issue of fact that he did not have a meaningful opportunity to exhaust his administrative remedies. Therefore, I recommend that the Court reject Defendant DeVito's exhaustion argument and set this matter for an evidentiary hearing.

### C.    Personal Involvement

Defendant DeVito argues that he was not personally involved in Plaintiff's transfer. (Dkt. No. 120-13 at 6-8.) As Plaintiff correctly notes, Defendant DeVito has not filed any affidavit or declaration on his own behalf. (Dkt. No. 128-2 ¶ 34.) Rather, he relies on the declaration of Jail Administrator Smith. (Dkt. No. 120-14 ¶ 20.) Mr. Smith declares that, "Annexed hereto as Exhibit B is a copy of the transfer f[or]m sent to the New York State Commission of Corrections. It was Sgt. Danzer who decided inmate Johnson, as well as the seven others[,] were eligible for transfer. Defendant Lt. William DeVito was not involved in the decision of who to transfer." (Dkt. No. 120-8 ¶¶ 17-18, emphasis omitted.)

Mr. Smith's declaration does not state any basis for personal knowledge. In fact, Mr.

Smith does not even use the cursory language, standard in declarations and affidavits, that his statements are based on personal knowledge. To be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must be based on personal knowledge. Fed. R. Civ. P. 56(c)(4). Therefore, the Smith Declaration, on its own, does not support the proposition that Defendant DeVito was not personally involved in Plaintiff's transfer.

The exhibit to which the Smith Declaration refers is titled Notification of Inmate Transfer. (Dkt. No. 120-10.) It lists eight inmates' names, states that the "reason for transfer" is "overcrowded," and lists the "name of reporting officer" as "Danzer." *Id.* The exhibit has not been authenticated. Motions for summary judgment must be supported by admissible evidence. *Major League Baseball Properties, Inc. v. Salvino*, 542 F. 3d 290, 309 (2d Cir. 2008). Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule. Fed. R. Evid. 802. The Notification of Inmate Transfer form is hearsay because Defendant DeVito is offering it to prove the truth of the matter asserted therein: that Sergeant Danzer was the "reporting officer" rather than Defendant DeVito. Fed. R. Evid. 801(c). It is true that documents such as the Notification of Inmate Transfer form, although hearsay, may be admissible under the business records exception to the hearsay rule. That exception renders admissible records of "an act, event, condition, opinion, or diagnosis if the record was made at or near the time by – or from information transmitted by – someone with knowledge" but only if such records are "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling" and if "making the record was a regular practice." Fed. R. Evid. 803(6) (A-C). Facts supporting admissibility must be supplied "by the testimony of the custodian or another qualified witness or by certification" that complies with Federal Rule of Evidence 902. Fed. R. Evid. 803(6) (D).

Here, the form is not supported by any custodial affidavit and has not been certified. Therefore, it is not admissible and does not support the motion for summary judgment.

Even if the form had been properly authenticated, it would not prove Defendant DeVito's lack of personal involvement in Plaintiff's transfer. Rather, it would show merely that Defendant DeVito was not the "reporting officer." There is no evidence that the "reporting officer" is solely responsible for transfer decisions. Therefore, because Defendant DeVito's assertion that he was not personally involved in Plaintiff's transfer is not supported by any admissible evidence, he has not shown that he is entitled to judgment in his favor and the burden does not shift to Plaintiff to raise a triable issue of fact.

Even if the burden had shifted, Plaintiff's deposition testimony meets that burden. Plaintiff testified that Sergeant Danzer stated that Defendant DeVito could stop the transfer, that both Plaintiff and his attorney relayed his fears to Defendant DeVito, and that Defendant DeVito did not act. (Dkt. No. 117-3 at 41:23-44:10.) This raises a triable issue of fact that Defendant DeVito directly participated in Plaintiff's transfer. Thus, I recommend that the Court reject Defendant DeVito's argument that he was not personally involved in Plaintiff's transfer.

### D. Deliberate Indifference

Defendant DeVito argues that, on the constitutional merits, he is entitled to summary judgment dismissing Plaintiff's failure to protect claim against him. (Dkt. No. 120-13 at 8-10.) Defendant DeVito essentially makes two arguments: (1) that the complaint fails to state a failure to protect claim; and (2) that the evidence does not create a triable issue of fact on the issue.

To prove a failure to protect claim, a plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials exhibited

21

deliberate indifference to that risk.[14]  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate

indifference is a conscious disregard of a substantial risk of serious harm.  *Id*. at 835.  "A general,

conclusory statement that an inmate fears for his safety, without more, is insufficient information

from which an inference can be drawn that such inmate's safety is actually at risk."  *Wilson v.

Campbell*, No. 06-CV-0175 (GLS-RFT), 2008 WL 902187, at * 5 (N.D.N.Y. Mar. 31, 2008).

Thus, a correctional official who disregards such a statement has not been deliberately indifferent

to conditions posing a substantial risk of harm.  *Id*.  Rather, in order to demonstrate deliberate

indifference, "an inmate must inform a correctional official of the basis for his belief" that there

is "a substantial threat to his safety before the correctional official can be charged with deliberate

indifference."  *Sims v. Bowen*, No. 96-CV-656 RSP/DRH, 1998 U.S. Dist. LEXIS 3856, at * 11,

1998 WL 146409, at * 3 (N.D.N.Y. Mar. 23, 1998).

      Regarding the sufficiency of the complaint, Defendant DeVito argues that "the Amended

Complaint is void of the allegations that defendant Lt. William DeVito was aware of any

substantial risk to plaintiff if he was transferred and therefore defendant Lt. William DeVito

could have not have possessed any culpable intent to rise to 'deliberate indifference.'"  (Dkt. No.

120-13 at 9.)  Defendant DeVito argues that "Plaintiff has not alleged, that either he or his

attorney, told defendant Lt. DeVito as to why plaintiff allegedly 'feared for his personal health

and safety', if moved to Chenango County Correctional facility and how defendant Lt. William

DeVito was 'deliberately indifferent' to plaintiff's safety."  (Dkt. No. 120-13 at 8, citation

---

[14]    Because Plaintiff was a pretrial detainee during the relevant time period, his
claims are analyzed under the Due Process Clause.  *Benjamin v. Fraser*, 343 F.3d 35, 49-50 (2d
Cir. 2003).  However, this legal standard is identical to the standard applicable to convicted
prisoners under the Eighth Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir.
2009).

omitted.)

The amended complaint alleges that "Defendant DeVito had received repeated requests, orally, from both plaintiff and his attorney, for him not to be transferred-out to Chenango County Correctional Facility due to prior conflicts between plaintiff and Correctional Officials at that facility and refused to act upon their requests." (Dkt. No. 93 ¶ 68.) This allegation is sufficient to state a failure to protect claim. *See Van Gorder v. Workman*, No. 03-CV-6409, 2006 U.S. Dist. LEXIS 79948, at * 2-3, 7, 2006 WL 3149360, at *1, 3 (W.D.N.Y. Nov. 1, 2006) (Siragusa, J.) (denying motion to dismiss where complaint alleged that inmate made "request[s] to be moved from the facility for personal reasons of safety" to "the same counselor who had been asked for a transfer several times before" and the counselor "refused by stating that until the plaintiff is assaulted, the only option would be to sign into protective custody."). Therefore, I recommend that the Court reject Defendant DeVito's argument that the operative complaint fails to state a failure to protect claim against him.

Regarding the sufficiency of the evidence, Defendant DeVito argues that he is entitled to summary judgment because "[P]laintiff admitted in his deposition testimony he never advised defendant DeVito of any prior problems at Chenango County when there in 2007." (Dkt. No. 120-13 at 8.)

As discussed above, Defendant DeVito bears the initial burden as the moving party to show through the production of admissible evidence that no genuine issue of material fact exists. *Salahuddin*, 467 F.3d at 272-73. In an attempt to meet this burden, Defendant DeVito's Statement of Material Facts asserts that there "are no allegations by [P]laintiff that he advised defendant Lt. William DeVito of any prior conflicts or incidences while incarcerated in the

Summer of 2007 at the Chenango County Jail facility." (Dkt. No. 120-14 ¶ 23.)  For that

proposition, Defendant DeVito cites three portions of Plaintiff's deposition testimony.  (*Id*. ¶ 23;

Dkt. No. 120-1 ¶ 28.)  In the first cited portion, Plaintiff testified that he believed that Defendant

DeVito was aware of Plaintiff being assaulted in 2007 at the Chenango County Jail because,

although Plaintiff "never discussed it with him personally," New York regulations "require that

all incident reports [be] recorded and . . . the administration should be aware, at least have

constructive knowledge."  (Dkt. No. 120-5 at 59:21-60:14.)   In the second cited portion, Plaintiff

testified that:

> Q:      [Y]ou also testified that you did not report what you claim
>         happened to you in 2007 to Lieutenant DeVito; correct?
> A:      Did I report it directly to Lieutenant DeVito?
> Q:      Yes.  Did you?
> A:      No, I didn't report it directly to DeVito.
> Q:      And you did not in writing provide anybody in Sullivan –
> A:      Wait, wait.  I'm sorry.  I'm sorry.  I did report to Lieutenant
>         DeVito on my way being transferred . . . to Chenango County
>         on that day.
> Q:      But that's not my question.  I said when you returned in 2007
>         from Chenango County you had testified that you had
>         discussed what allegedly occurred to you with certain officers,
>         but Lieutenant DeVito was not one of them; correct?
> A:      That's correct.

(Dkt. No. 120-5 at 69:11-70:3.)  In the third cited portion, Plaintiff responded "yes" when asked,

"You said you believe that Lieutenant DeVito knew of what occurred to you in Chenango County

because . . . under Title 9 he was to be aware of all incident reports; correct?"  (Dkt. No. 120-5 at

63:9-13.)

Plaintiff contradicted himself in the three portions of deposition testimony cited by

Defendant DeVito.  In the first, he testified that he *never* personally informed Defendant DeVito

that he had been assaulted at the Chenango County Jail in 2007.  In the second, he testified that

he "did report [what happened to him in 2007] to Lieutenant DeVito on [his] way to being transferred . . . to Chenango County that day."  In the third,  he testified that he believed Defendant DeVito knew what happened at the Chenango County Jail in 2007 because of his statutory duty to be aware of incident reports.

Although Plaintiff's deposition testimony is contradictory, it does not conclusively establish that there "are no allegations by [P]laintiff that he advised defendant Lt. William DeVito of any prior conflicts or incidences while incarcerated in the Summer of 2007 at the Chenango County Jail facility." (Dkt. No. 120-14 ¶ 23.)  If Plaintiff's second statement were accepted as true, a trier of fact could conclude that Plaintiff informed Defendant DeVito what happened to him in 2007 as he was being transferred to the Chenango County Jail.  "Credibility determinations . . . are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255; *see also Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").  Thus, Defendant DeVito has not met his burden of showing that no genuine issue of material fact exists.  Therefore, I recommend that the Court deny Defendant DeVito's motion for summary judgment.[15]

Even if Defendant DeVito had met his initial burden, Plaintiff has raised a triable issue of fact regarding deliberate indifference.  Plaintiff cites his own deposition testimony.  (Dkt. No.

---

[15]     I note that Defendant DeVito does *not* argue that Plaintiff failed to establish the objective prong of his failure to protect claim.  In other words, Defendant DeVito does not argue that Plaintiff did not face a substantial risk of harm by being transferred to the Chenango County Jail.  Rather, Defendant DeVito's argument hinges entirely on the subjective prong: he argues that he was not deliberately indifferent.  I express no opinion regarding the merits of the objective prong of Plaintiff's failure to protect claim.

128 ¶ 23.)  In the portion of testimony cited by Plaintiff, he testified that he told Corporal

Ciangelo that he was afraid to go to the Chenango County Jail because of his previous experience

there and that she stated that she remembered what had happened to Plaintiff.  (Dkt. No. 117-3 at

36:18-37:10.[16])  She stated that she would notify a sergeant.  (Dkt. No. 117-3 at 37:10-15.)

Plaintiff then contacted his lawyer.  (Dkt. No. 117-3 at 37:16-18.)  Plaintiff informed his attorney

that he was assaulted by Chenango County officers in 2007 and that they "cursed me and told me

that if I ever came back to that facility it will be a problem."  (Dkt. No. 117-3 at 40:9-14.)  Then

Sergeant Danzer came to speak to Plaintiff.  (Dkt. No. 117-3 at 40:20-22.)  Plaintiff told Sergeant

Danzer that he was afraid of being transferred because Chenango County officials assaulted and

threatened him in 2007.  (Dkt. No. 117-3 at 41:3-21.)  Sergeant Danzer said that all he could do

was bring it to Defendant DeVito's attention.  (Dkt. No. 117-3 at 21-42:2.)  Plaintiff called his

attorney, he told him that he had spoken to Defendant DeVito and told him "everything that

[Plaintiff] told him."  (Dkt. No. 117-3 at 42:5-13.)  After that, Sergeant Danzer and Corporal

Ciangelo returned and told Plaintiff that Defendant DeVito was not going to stop the transfer.

(Dkt. No. 117-3 at 43:3-9.)  On the way out of the facility, Plaintiff saw Defendant DeVito and

said "Mr. DeVito, please, I'm in great fear of my safety and health.  I was assaulted last time I

was there, you're familiar with that, and how they be treating us, please don't transfer me, man,

they have threatened me if I come back there was going to be a problem."  (Dkt. No. 117-3 at

43:10-44:10.)  Defendant DeVito did not reply.  (Dkt. No. 117-3 at 44:10-12.)  This cited

_____

[16]      Plaintiff did not provide the Court with a copy of his deposition transcript.  The
copy provided by Defendant DeVito is incomplete and does include the pages to which Plaintiff
cites.  Out of special solicitude to Plaintiff, who is proceeding pro se, the Court has read the cited
pages from the complete deposition transcript provided by the Chenango County Defendants in
support of their motion for summary judgment.  (Dkt. No. 117-3.)

testimony raises a triable issue of fact that Plaintiff informed Defendant DeVito of the basis for his belief that being transferred to the Chenango County Jail posed a substantial threat to his safety. Therefore, even if Defendant DeVito had met his initial burden, I would recommend that the Court deny his motion for summary judgment.

### E. Official Capacity Claims

Defendant DeVito's motion for summary judgment does not address the claims against him in his official capacity. However, for the same reasons discussed in Section III(A)(2) regarding the official capacity claim against Defendant Schiff, I recommend that the Court sua sponte dismiss the official capacity claim against Defendant DeVito.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk correct the caption to list the first defendant as "Michael A. Schiff;" and it is further

**RECOMMENDED** that Defendant Schiff's motion for summary judgment (Dkt. No. 122) be **GRANTED** and that the Clerk terminate him as a party in this action; and it is further

**RECOMMENDED** that the Court deny Plaintiff's motion to strike (Dkt. No. 136); and it is further

**RECOMMENDED** that the Court schedule this case for an evidentiary hearing on the issue of exhaustion of administrative remedies; and it is further

**RECOMMENDED** that the Court deny Defendant DeVito's motion for summary judgment (Dkt. No. 120); and it is further

**RECOMMENDED** that the Court sua sponte dismiss the official capacity claim against Defendant DeVito; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Shaw v. Superintendent*, No. 03–CV–0610 (NPM), 2007 U.S. Dist. LEXIS 22460, 2007 WL 951459 (N.D.N.Y. Mar. 28, 2007); *Garraway v. Broome Cnty.*, No. 03–CV–0681, 2006 U.S. Dist. LEXIS 17563, 2006 WL 931729 (N.D.N.Y. Apr.7, 2006) (McAvoy, J.); *Wilson v. Campbell*, No. 06-CV-0175 (GLS-RFT), 2008 WL 902187 (N.D.N.Y. Mar. 31, 2008); *Sims v. Bowen*, No. 96-CV-656 RSP/DRH, 1998 U.S. Dist. LEXIS 3856, 1998 WL 146409 (N.D.N.Y. Mar. 23, 1998); and *Van Gorder v. Workman*, No. 03-CV-6409, 2006 U.S. Dist. LEXIS 79948, 2006 WL 3149360 (W.D.N.Y. Nov. 1, 2006).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: September 10, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge