UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELO JOHNSON,

                              Plaintiff,

                                                    9:11-CV-0531
v.                                                  (MAD/TWD)

MICHAEL A. SCHIFF, LT. WILLIAM DEVITO,
THOMAS LOUGHERN, SGT. FRIOT, SGT. SHOALE,[1]
SGT. RYAN, C.O. CHESEBRO, C.O. MOSCATO,
C.O. ALEMAR, C.O. ROTUNDO, C.O. DEMUN,
C.O. PARKER, C.O. LACOTTA, C.O. JOHN DOE,
R.N. JOANNE LOCKE, C.O. HACKETT,
LT. SCHULT,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

ANGELO JOHNSON
Plaintiff pro se
Sullivan County Jail
4 Bushnell Avenue
Monticello, NY 12701

LEVENE, GOULDIN & THOMPSON, LLP                     MARIA LISI-MURRAY, ESQ.
Counsel for Chenango County Defendants
450 Plaza Drive
Vestal, NY 13850

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino,

---

[1]    In her affidavit filed in support of the motion for summary judgment, this
defendant spells her name "Tonya Shoales."  The Clerk is directed to change the caption to
reflect the correct spelling of Defendant Shoales' surname.

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Angelo Johnson claims that Defendants subjected him to excessive force, denied him medical care, retaliated against him for filing grievances, and denied him access to his attorney. (Dkt. No. 93.) Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 117.) For the reasons discussed below, I recommend that Defendants' motion be granted in part and denied in part.

I.      FACTUAL AND PROCEDURAL SUMMARY

During the month of May 2008, Plaintiff was confined at the Chenango County Correctional Facility as a pretrial detainee. (Dkt. No. 93 ¶¶ 3, 36, 66.) On May 10, 2008, Plaintiff filed a grievance requesting that he be returned to Sullivan County, where criminal charges were pending. (Dkt. No. 93 ¶¶ 36-37; Dkt. No. 117-9 at 60.) Plaintiff alleges that Defendant Correction Officer Mark Alemar retaliated against him for filing the grievance by falsely informing his supervisor that Plaintiff had threatened to stab an officer. (Dkt. No. 93 ¶ 56.) In response to Defendant Alemar's report, it was determined that Plaintiff should be moved to administrative segregation. (Dkt. No. 117-15 ¶ 8.) Defendants Ryan, Friot, Hackett, Chesebro, Moscato, Rotundo, and DeMun came to Plaintiff's cell to transport him to administrative segregation. (Dkt. No. 93 ¶ 38.) Plaintiff alleges that the officers subjected him to excessive force without provocation. (Dkt. No. 93 ¶¶ 42-48.) Defendants assert that they used only the amount of force appropriate under the circumstances, given Plaintiff's alleged threats and his behavior. (Dkt. Nos. 117-12 ¶¶ 3-7, 117-15 ¶¶ 3-7, 117-16 ¶¶ 3-7, 117-17 ¶¶ 3-7, 117-18 ¶¶ 3-7, 117-19 ¶¶ 3-7.)

Plaintiff alleges that the conditions of confinement in administrative segregation were

inhumane.  (Dkt. No. 93 ¶ 49.)

Plaintiff alleges that on May 19, 2008, he was denied the right to contact his attorney. (Dkt. No. 93 ¶¶ 57-60.)  Plaintiff alleges that when he protested, non-defendant officer Loiselle pepper-sprayed him in the face and Defendant Christopher LoCotta punched him in the head. (Dkt. No. 93 ¶ 62.)  Plaintiff alleges that the officers returned him to his cell and subjected him to excessive force in the presence of Defendant Tonya Shoales.  (Dkt. No. 93 ¶ 65.)

Plaintiff alleges that Defendant Nurse Joanne Locke denied him adequate medical care after these incidents.  (Dkt. No. 93 ¶¶ 78-79.)

Plaintiff filed the original complaint in this action on May 11, 2011.  (Dkt. No. 1.)  The operative pleading is the amended complaint.  (Dkt. No. 93.)  Defendants answered the amended complaint.  (Dkt. Nos. 104.)  Defendants now move for summary judgment.  (Dkt. No. 117.) Plaintiff has opposed the motion.  (Dkt. No. 127.)  Defendants have filed a reply.  (Dkt. No. 133.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Id*. at 273.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's]

pleading" or "simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a

dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). In determining whether a genuine issue of material[2] fact exists, the Court must resolve

all ambiguities and draw all reasonable inferences against the moving party. *Major League*

*Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

      **B.**      **Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of

Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion

is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure

to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen.*

*Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord Katz v. Molic*, 128 F.R.D. 35, 37-38

(S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment

motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to

the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal

Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure

12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.

---

[2]      A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson*, 477 U.S. at 248.

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendants argue that some or all of Plaintiff's claims are barred because Plaintiff failed

to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").[3] (Dkt. No. 117-21 at 15-16.) Plaintiff argues that, to the extent he did not exhaust his administrative remedies, his failure to exhaust should be excused because Defendants thwarted his attempts to file grievances. (Dkt. No. 127-1 at 6-10.) Because I find that Plaintiff has raised a triable issue of fact, I recommend that the Court schedule this matter for an evidentiary hearing regarding the exhaustion of administrative remedies.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

---

[3]     Defendants do not appear to argue that Plaintiff failed to exhaust his administrative remedies regarding the May 10, 2008, incident. The Statement of Material Facts does not state that Plaintiff failed to exhaust his remedies regarding that incident. (Dkt. No. 117-20.) Defendants' memorandum of law states that "the plaintiff failed to exhaust his administrative remedies concerning all allegations in his Complaint, *except arguably for the May 10, 2008 alleged incident*." (Dkt. No. 117-21 at 16. Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.) In the interest of completeness, however, I will address Plaintiff's grievance regarding that incident.

The Chenango County Correctional Facility has a seven-part inmate grievance procedure. (Dkt. No. 117-9 at 25-26.[4]) First, the inmate must "attempt to reach a solution with the Corrections Officer assigned" to his housing area. *Id*. at 26. Second, the inmate may request an informal complaint form. *Id*. Third, the inmate may request a formal grievance form. *Id*. Fourth, the grievance is investigated and the Investigating Grievance Officer provides a written determination within five business days of receiving the complaint. *Id*. Fifth, the inmate may appeal to the Jail Administrator or his designee within two business days of receiving the Grievance Officer's decision. *Id*. Sixth, the Jail Administrator responds within five business days. *Id*. Seventh, the inmate may appeal to the State Commission of Corrections, which responds within forty-five days. *Id*.

As discussed above, in this action, Plaintiff complains of four separate incidents at the Chenango County Correctional Facility: (1) the alleged May 10, 2008, use of excessive force and the alleged failure to provide medical care afterward; (2) the alleged May 19, 2008, use of pepper spray and other excessive force; (3) the alleged conditions of confinement in his cell; and (4) the alleged May 19, 2008, denial of a phone call to his attorney. (Dkt. No. 93 ¶¶ 42-49, 57-60, 62.)

Regarding the first incident, the evidence submitted by Defendants shows that Plaintiff filed a grievance regarding the May 10, 2008, use of excessive force. (Dkt. No. 117-9 at 66-67.) Although the grievance itself does not mention medical care, the facility's investigation of the grievance included an inquiry into the medical care that Plaintiff received. *Id*. at 70. Plaintiff appealed this grievance through all of the applicable steps and received a decision from the State

---

[4]    Citations to page numbers in the Inmate Rules and Regulations refer to the page numbers assigned by the Court's electronic filing system.

Commission of Corrections dated July 10, 2008. (Dkt. No. 117-9 at 65.) Thus, Plaintiff

exhausted his administrative remedies regarding the alleged May 10, 2008, use of force and

denial of medical care.

Regarding the other incidents, however, Plaintiff did not complete the grievance process.

His grievance file does not contain any decisions from the State Commission of Corrections

regarding the pepper spray incident, his conditions of confinement, or the alleged denial of a

phone call to his attorney. (Dkt. No. 117-9 at 59-97.) Therefore, Plaintiff failed to exhaust his

administrative remedies regarding three of the incidents of which he complains in this action.

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has

held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available

administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[5] First,

"the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in

fact 'available' to the prisoner." *Id.* at 686 (citation omitted). Second, if those remedies were

available:

> the court should . . . inquire as to whether [some or all of] the
> defendants may have forfeited the affirmative defense of non-
> exhaustion by failing to raise or preserve it . . . or whether the
> defendants' own actions inhibiting the [prisoner's] exhaustion of
> remedies may estop one or more of the defendants from raising the
> plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not

forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should

---

[5]     The Second Circuit has not yet decided whether the *Hemphill* rule has survived
the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102
(2d Cir. 2011).

consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, as discussed above, administrative remedies were available to Plaintiff. Defendants preserved the exhaustion defense by pleading it in their answer. (Dkt. No. 104 ¶ 11; *Jones*, 549 U.S. at 216; *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010).) However, Plaintiff has raised a triable issue that Defendants are estopped from asserting the exhaustion defense. *See Ziemba v. Wezner*, 366 F.3d 161, 162-64 (2d Cir. 2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison). Plaintiff states in opposition to the motion for summary judgment that Defendant Shoales refused to give him a grievance form when he requested one after the pepper spray incident. (Dkt. No. 127-1 at 7.) In the same document he states that he was not allowed to personally file a grievance regarding his conditions of confinement. *Id.* He states in his verified complaint that when he asked for a grievance form after the alleged phone call incident, non-defendant Loiselle pepper sprayed him in the face and Defendant LoCotta punched him on the side of the head. (Dkt. No. 93 ¶ 62.) Therefore, I recommend that the Court schedule this matter for an evidentiary hearing on the issue of exhaustion of administrative remedies regarding the pepper spray incident, Plaintiff's conditions of confinement, and the phone call incident.

## B.     Statute of Limitations

The operative complaint alleges that Defendants committed "assault and battery under State Law." (Dkt. No. 93 ¶¶ 83, 86.) Defendants argue that Plaintiff's state law claims for

assault and battery must be dismissed because they are barred by the applicable statute of limitations. (Dkt. No. 117-21 at 10.) Defendants are correct. In New York, such claims are governed by a one-year statute of limitations. N.Y. C.P.L.R. 215(3) (McKinney 2013). Here, the original complaint was not filed until three years after the alleged incidents at the Chenango County Correctional Facility. (Dkt. No. 1.) Indeed, Plaintiff concedes that the Court should dismiss his state law assault and battery claims. (Dkt. No. 127-1 at 5.[6])

### C.     Notice of Claim Requirements

Defendants argue that any state law claims that Plaintiff's complaint asserts must be dismissed because Plaintiff's notice of claim was (a) untimely; and (b) insufficiently specific. (Dkt. No. 117-21 at 10-11.) I will address only Defendants' first argument, as it is dispositive.

Under New York law, a plaintiff asserting a tort claim against a county or its employees acting within the scope of their employment must serve a notice of claim on the municipality within ninety days of the claim arising. *Anderson v. Nassau Cnty. Dept. of Corr.*, 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008); *Houghton v. Cardone*, 295 F. Supp. 2d 268, 280 (W.D.N.Y. 2003). If a plaintiff fails to file a timely claim, the plaintiff's state law claims are time-barred. *Houghton*, 295 F. Supp. 2d at 280.

Here, the events of which Plaintiff complains occurred in May 2008. (Dkt. No. 93.) Plaintiff signed his notice of claim on October 23, 2008. (Dkt. No. 117-4 at 3.) Thus, he did not timely serve his notice of claim. Plaintiff argues that Defendants should be estopped from asserting the notice of claim defense because they "afforded Plaintiff with misleading

---

[6]     Citations to page numbers in Plaintiff's memorandum of law refer to the page numbers assigned by the Court's electronic filing system.

information on how to file[] the notice of claim." (Dkt. No. 127-1 at 6.)  This Court cannot apply

the doctrine of estoppel in this case.  Although New York law allows state supreme and county

courts to excuse late-filed notices of claim, the weight of authority holds that federal courts lack

jurisdiction to grant extensions of time to file notices of claim or to deem late-filed notices of

claim as timely.  *Crippen v. Town of Hempstead*, No. 07-CV-3478 (JFB) (ARL), 2009 U.S. Dist.

LEXIS 24820, at *53-55, 2009 WL 803117, at *17 (W.D.N.Y. Mar. 25, 2009) (collecting cases).

Accordingly, Plaintiff's state law claims are barred because he did not timely serve a notice of

claim.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment

and dismiss Plaintiff's state law claims.

> **D.      Claims Against Defendant Friot**

The operative complaint asserts an excessive force claim against Defendant Sergeant

Friot.  (Dkt. No. 93 ¶¶  8, 42-44, 47-48.)  In their answer to the original complaint, Defendants

asserted that "Sgt. Friot, upon information and belief, is deceased.  He is not a properly named

defendant."  (Dkt. No. 23 ¶ 16.)  It is not clear when Defendant Friot died.  Defendant Friot was

never served.  In their motion for summary judgment, Defendants argue that all claims against

Defendant Friot should be dismissed.  (Dkt. No. 117-21 at 16.)  Defendants are correct.  When a

party dies prior to being served, the procedure set forth in Federal Rule of Civil Procedure 25 to

substitute a "proper party" for the deceased party does not apply, the action against the deceased

is a "nullity," and the deceased party should be dismissed with prejudice.  *See Lacy v. Tyson*, No.

1:07-cv-00381-LJO-GSA-PC, 2012 U.S. Dist. LEXIS 134932, at * 3-7, 2012 WL 4343837, at *

2-3 (E.D. Cal. Sept. 20, 2012) (collecting cases).[7]  Therefore, I recommend that the Court dismiss the claims against Defendant Friot with prejudice.

### E.    Personal Involvement

Defendants argue that the claims against Defendants  Parker, Loughren, Schult, Shoales, and Alemar should be dismissed for lack of personal involvement.  (Dkt. No. 117-21 at 7-10.)  Defendants are correct regarding Defendants Parker and Loughren.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam).  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted).  Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it

---

[7]       The Court will provide Plaintiff with a copy of all unpublished decisions cited in this Report-Recommendation in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

12

through a report or appeal; (3) created, or allowed to continue, a policy or custom under which

the violation occurred; (4) had been grossly negligent in managing subordinates who caused the

violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on

information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d

Cir. 1995) (citations omitted).[8]

### 1.    Defendant Parker

Defendant Parker's name appears in the caption of the operative complaint (Dkt. No. 93

at 1) and in the list of parties (*Id.* ¶ 17).  However, the only mention of him in the body of the

operative complaint is that he was present when pictures were taken of Plaintiff's injuries after

the May 10, 2008, incident.  *Id.* ¶ 54.  Plaintiff concedes that any claim against Defendant Parker

should be dismissed for lack of personal involvement.  (Dkt. No. 127-1 at 15.)  Therefore, I

recommend that the Court grant Defendants' motion, dismiss the claims against Defendant

Parker, and terminate him as a defendant in this action.

### 2.    Defendant Loughren

The complaint alleges that Defendant Loughren "is the Sheriff of Chenango County and

is responsible for operating and maintaining the order of Chenango County Correctional

Facility."  (Dkt. No. 93 ¶ 6.)  The complaint does not contain any substantive allegations

---

[8]      In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies.  The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories.  Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories.  *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases).  I will assume for the purposes of this motion that *Colon* remains good law.

regarding Defendant Loughren. In opposition to Defendants' motion for summary judgment, Plaintiff argues that Defendant Loughren, as Sheriff, "was obliged to at leas[t] have construct[ive] knowledge" about the welfare and safety of each inmate at the Chenango County Correctional Facility. (Dkt. No. 127-1 at 13.) Plaintiff also argues that Defendant Loughren should have received reports about the incidents of May 10, 2008, and May 19, 2008, through his "channel of communication." *Id*. Plaintiff argues that Defendant Loughren's alleged subsequent failure to adequately train, instruct, supervise, and control his subordinates constitutes gross negligence or recklessness. *Id.* at 14.

Plaintiff's arguments do not establish Defendant Loughren's personal involvement. A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference . . . by failing to act on information indicating that the violation was occurring." *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000). *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Similarly, "an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). Moreover, a supervisor's referral of a complaint to a subordinate for investigation does not constitute personal involvement. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *see also Wright v. Genovese*, 694 F. Supp. 2d 137, 161 (N.D.N.Y. 2010). Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claims against Defendant Loughren for lack of

personal involvement.

### 3. Defendant Schult

The complaint alleges that Defendant Schult "is employed as a correctional lieutenant at Chenango County Correctional Facility and is generally responsible for assisting in its day to day operations and executes its policies." (Dkt. No. 93 ¶ 7.) Plaintiff alleges that Defendant Schult placed him in administrative segregation. *Id*. ¶¶ 56, 66. Defendants' statement of material facts asserts that "Plaintiff has alleged that Lt. Schult ordered his administrative segregation beginning on May 10, 2008. However, he was ordered to be moved to administrative segregation by Sgt. George Ryan." (Dkt. No. 117-20 ¶ 4.) However, Defendant Schult's affidavit states that "Sergeant George Ryan caused plaintiff to be moved to Administrative Segregation, *which was approved and reviewed by myself*." (Dkt. No. 117-8 ¶ 5, emphasis added.) Defendant Schult's affidavit establishes that Defendant Schult was actively involved in the decision to place Plaintiff in administrative segregation. Thus, Defendant Schult has not demonstrated that he lacked personal involvement. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Defendant Schult for lack of personal involvement.

### 4. Defendant Shoales

The complaint alleges that Defendant Shoales "is employed as a correctional sergeant at Chenango County Correctional Facility and is generally responsible for the supervision of employees, detainees and executes the facility's policies." (Dkt. No. 93 ¶ 9.) Plaintiff alleges that Defendant Shoales granted him permission to place a legal call on May 19, 2008. *Id*. ¶ 57. In the verified complaint, Plaintiff alleges that Defendant Shoales was present when Defendant LoCotta hit Plaintiff numerous times in the head and body on May 19, 2008, but did nothing to

prevent or stop the assault. *Id.* ¶¶ 65, 82. In her affidavit filed in support of the motion for summary judgment, Defendant Shoales states that "I was involved in the May 19, 2008 incident where the plaintiff was pepper-sprayed as a result of his failure to comply with the orders of corrections officers . . . My only involvement was to order that plaintiff be decontaminated." (Dkt. No. 117-14 ¶ 11.) Defendant Shoales' affidavit establishes that she was personally involved in the May 19, 2008, incident. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Defendant Shoales for lack of personal involvement.

5.     Defendant Alemar

The complaint alleges that Defendant Alemar "is a correctional officer employed at the Chenango County Correctional Facility and is generally responsible for the supervision of detainees and executes the facility's policies." (Dkt. No. 93 ¶ 11.) Plaintiff alleges that he requested a grievance form from Defendant Alemar on May 10, 2008, at approximately 7:30 a.m. *Id.* ¶ 36. Defendant Alemar asked him why he wanted the form. *Id.* Plaintiff explained, was given a form, filled it out, and returned it to Defendant Alemar. *Id.* Plaintiff alleges that Defendant Alemar then falsely told his supervisor that Plaintiff had threatened to stab an officer, which led to Plaintiff being assaulted and placed into administrative segregation. *Id.* ¶¶ 56, 70. Plaintiff alleges that Defendant Alemar opened the cell door for the other officers when they used excessive force later that day. *Id.* ¶ 39. In an affidavit filed in support of the motion for summary judgment, Defendant Alemar provides his version of his conversation with Plaintiff regarding grievance forms, describes filing an inmate violation report accusing Plaintiff of making threats, intimidating staff members, and engaging in conduct disrupting the safety, security and good order of the facility, and states that he remained at the officer's station and did

not follow the other defendants into Plaintiff's cell. (Dkt. No. 117-23 ¶¶ 9-10.) Defendant

Alemar's affidavit establishes that he was personally involved in the May 10, 2008, incident.

Therefore, I recommend that the Court deny Defendants' motion for summary judgment

dismissing Defendant Alemar for lack of personal involvement.

### F.      Excessive Force

#### 1.      May 10, 2008, Incident

Defendants argue that they are entitled to summary judgment dismissing Plaintiff's

excessive force claims regarding the May 10, 2008, incident. (Dkt. No. 117-21 at 14.) For the

reasons discussed below, I find that Plaintiff has raised a triable issue of fact and therefore

Defendants' motion for summary judgment should be denied.

When prison officials are "accused of using excessive physical force in violation of the

Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).[9] "In determining whether the use of

force was wanton and unnecessary," the court should evaluate "the need for application of force,

relationship between that need and the amount of force used, the threat reasonably perceived by

responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. at 7

(citation and quotation marks omitted). Not:

> every malevolent touch by a prison guard gives rise to a federal cause
> of action. The Eighth Amendment's prohibition of cruel and usual
> punishments necessarily excludes from constitutional recognition *de*

---

[9]      The legal standard applicable to pretrial detainees' allegations of excessive force
is identical to the *Hudson* Eighth Amendment standard. *United States v. Walsh*, 194 F.3d 37, 47
(2d Cir. 1999).

> *minimis* uses of physical force, provided that the use of force is not of
> a sort repugnant to the conscience of mankind.

*Id.* at 9 (citations and internal quotation marks omitted).

Defendants argue that they are entitled to summary judgment because "the plaintiff cannot establish that he sustained an injury of sufficient severity, worthy of Eighth Amendment protection." (Dkt. No. 117-21 at 14.) Defendants misstate the applicable standard. The "core judicial inquiry" in an excessive force case is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (punctuation and citations omitted). The degree of a prisoner's injury is relevant in some ways. For instance, the extent of any injury suffered by the inmate "is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 7 (citation and quotation marks omitted). The degree of injury suffered by a prisoner "may also provide some indication of the amount of force applied." *Wilkins*, 559 U.S. at 37. But "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without grievous injury." *Id*. at 38.

Here, Plaintiff alleges in his verified complaint that, without provocation, Defendants Ryan, Friot, Hackett, Chesebro, Mocato, Rotundo, and DeMun banged his head against his cell wall, placed him in manacle restraints, choked him, kicked him, beat him, and dragged him until he was in a state of semi-consciousness. (Dkt. No. 93 ¶¶ 38-48.) Defendants Ryan, Hackett,

Chesebro, Mocato, Rotundo, and DeMun declare that they used appropriate force on Plaintiff to move him to administrative segregation based on their observations of his behavior and their belief that he had threatened to stab an officer. (Dkt. Nos. 117-12 ¶¶ 3-7, 117-15 ¶¶ 3-7, 117-16 ¶¶ 3-7, 117-17 ¶¶ 3-7, 117-18 ¶¶ 3-7, 117-19 ¶¶ 3-7.) The competing versions of what transpired do not establish that either party is entitled to judgment as a matter of law. Rather, these competing versions raise triable issues of fact for a jury to determine. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Plaintiff's excessive force claim regarding the May 10, 2008, incident.

     2.    <u>May 19, 2008, Incident</u>

Defendants argue that they are entitled to summary judgment dismissing Plaintiff's excessive force claim regarding the May 19, 2008, incident because the:

> affidavit of C.O. LaCotta demonstrates that the aggressive conduct of the plaintiff resulted in C.O. Loiselle administering a . . . one-second burst of oleoresin capsicum 'pepper spray', toward plaintiff. As set forth in plaintiff's complaint, he was ordered to decontamination by Sgt. Shoales. While plaintiff makes further allegations of alleged 'hitting' to his head and body, he suffered no injury.

(Dkt. No. 117-21 at 15.) For the reasons discussed below, I find that Plaintiff has raised a triable issue of fact.

Plaintiff states in his verified complaint that on May 19, 2008, non-defendant Loiselle pepper sprayed him in the face and Defendant LoCotta punched him in the side of the head after Plaintiff requested a grievance form. (Dkt. No. 93 ¶ 62.) Plaintiff further alleges that Defendant LoCotta, without provocation, hit him "numerous times upon the head and body." *Id*. ¶ 65. Defendant LoCotta, conversely, declares that Loiselle used the pepper spray because Plaintiff "made an aggressive, sudden move from his bunk toward us" and that "[o]nly the appropriate

level of force was used." (Dkt. No. 117-11 ¶¶ 11, 13.) The competing versions of what transpired do not establish that either party is entitled to judgment as a matter of law. Rather, these competing versions raise triable issues of fact for a jury to determine. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Plaintiff's excessive force claim regarding the May 19, 2008, incident.

G.     **Equal Protection**

Read broadly, the complaint alleges that Defendants violated his right to equal protection by "allowing him to remain in administrative segregation without the minimum basic supplies afforded to other inmates housed on the unit with the same status." (Dkt. No. 93 ¶ 85.) In opposition to the motion for summary judgment, Plaintiff argues that he "was intentionally treated differently from other similarly-situated individuals without any rational basis. Notably, [a]ll other inmates in Adseg were entitle[d] to their minimum standards, due process and were from that county and wasn't (sic) black and from Monticello." (Dkt. No. 127-1 at 21.) Defendants argue that they are entitled to summary judgment dismissing Plaintiff's equal protection claim because "the record is devoid of any evidence to create a question of fact" and because Plaintiff "fails to plead that similarly situated individuals were treated differently or that he is pleading a 'class of one' Equal Protection Claim." (Dkt. No. 117-21 at 12.)

The Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly

situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational basis for the difference in treatment." *Id*. (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Thus, a plaintiff asserting an equal protection claim must prove that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right,[10] acted out of malice, or acted irrationally and arbitrarily.

Where a plaintiff asserting an equal protection cause of action alleges that he or she was treated differently from similarly situated individuals on the basis of race, proof of racially discriminatory animus or purpose is required.  *Bussey v. Phillips*, 419 F. Supp. 2d 569, 581 (S.D.N.Y. 2006).  Such intent can be shown in "several ways, including by identifying a law or policy that expressly classifies persons on the basis of race, a facially neutral law or policy that has been applied in an intentionally discriminatory manner, or a facially neutral statute or policy that has an adverse effect and is motivated by discriminatory animus." *Id*.  Here, other than the

---

[10]    The fundamental rights protected by the Equal Protection Clause, as identified by the United States Supreme Court, fall into six substantive categories: (1) the right to freedom of association; (2) the right to vote; (3) the right to interstate travel; (4) the right to fairness in the criminal process (which includes the right to counsel and the right of access to the courts); (5) the right to procedural due process; and (6) the right to privacy "which includes various forms of freedom of choice in matters relating to the individual's personal life" such as freedom of choice in marital decisions, child bearing, and child rearing.  2 Ronald D. Rotunda & John E. Nowak, Treatise On Constitutional Law Substance and Procedure, § 15.7 (4th ed. 2010).

bare allegation in his opposition papers that "[a]ll other inmates in Adseg were entitle[d] to their

minimum standards, due process and were from that county and wasn't (sic) black and from

Monticello," Plaintiff has not alleged or produced any evidence of racial animus. (Dkt. No. 127-

1 at 21.) Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection

claim to the extent that he argues that he was the victim of racial discrimination.

Plaintiff may also be asserting an equal protection claim on a "class of one" theory. (Dkt.

No. 127-1 at 19.) To prove such a claim, a plaintiff must show that:

> no rational person could regard the circumstances of the plaintiff to
> differ from those of a comparator to a degree that would justify the
> differential treatment on the basis of a legitimate government policy;
> and [that] the similarity in circumstances and difference in treatment
> are sufficient to exclude the possibility that the defendant acted on the
> basis of a mistake.

*Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) *overruled on other grounds by Appel v.*

*Spiridon*, 531 F.3d 138 (2d Cir. 2008). There must be an "extremely high" level of similarity

between the plaintiff and the persons with whom he compares himself. *Neilson*, 409 F.3d at 104.

Furthermore, class of one plaintiffs are required to prove "intentional disparate treatment, that is,

[they must] demonstrate the decisionmakers were aware that there were other similarly-situated

individuals who were treated differently." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d

135, 143 (2d Cir. 2010) (quoting *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir.

2001) (internal quotes omitted). Here, Plaintiff has produced no such evidence. Therefore, I

recommend that the Court grant Defendants' motion for summary judgment and dismiss

Plaintiff's equal protection claims.

### H. Due Process

Plaintiff alleges that Defendants violated his rights under the Fourteenth Amendment.

(Dkt. No. 93 ¶ 86.)  Read broadly, this can be construed as an allegation that Defendant Alemar violated Plaintiff's right to procedural due process by falsely reporting that Plaintiff threatened to stab a corrections officer, which resulted in Plaintiff being placed in administrative segregation. Defendants move for summary judgment of this claim.  (Dkt. No. 117-21 at 12-13.)  Because I find that Plaintiff was not deprived of a liberty interest, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the procedural due process claim.

A prisoner's claim that a correctional officer filed a false misbehavior report may implicate the Fourteenth Amendment right to procedural due process.  *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986); *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988); *Jones v. Coughlin*, 45 F.3d 677 (2d Cir. 1995).  The Second Circuit has held that while a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," he *does* have "the right not to be deprived of a protected liberty interest without due process of law."  *Freeman*, 808 F.2d at 951. An inmate has a liberty interest in remaining free from a confinement or restraint where the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).  "Post-*Sandin*, the decisions in the Second Circuit are unanimous that [disciplinary] confinement of 30 days or less" is not an atypical or significant hardship.  *Gssime v. Burge*, No. 6:08-CV-6404 (MAT), 2013 U.S. Dist. LEXIS 94827, at * 6-7, 2013 WL 3423816, at * 2 (W.D.N.Y. July 8, 2013) (collecting cases).  Here, Plaintiff was held in administrative segregation only from May 10, 2008, to May 31, 2008.  (Dkt. No. 93 ¶ 66.)  This confinement of less than thirty days does not implicate a

liberty interest.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's due process claim.

## I.    Retaliation

Plaintiff alleges that Defendants retaliated against him for filing a grievance by falsely reporting that he had threatened to stab an officer, assaulting him, denying him a legal phone call, and denying him medical care.  (Dkt. No. 93 ¶¶ 72-73.)  Defendants argue that the complaint fails to state a retaliation claim.  (Dkt. No. 117-21 at 19-20.)  Defendants are correct.

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly

suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

Plaintiff alleges that Defendants retaliated against him for filing a grievance. (Dkt. No. 93 ¶ 72.) The filing of a grievance against prison officials is constitutionally protected conduct. *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). Therefore, the complaint states a claim regarding the first element of Plaintiff's retaliation claim.

Plaintiff alleges that Defendants took adverse actions against him by falsely accusing him of threatening to stab an officer, assaulting him, denying him a legal phone call, and denying him medical care. (Dkt. No. 93 ¶ 73.) The Second Circuit defines "'adverse action' objectively*, as* retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superceded by* 320 F.3d 346, 2003 U.S. App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Id.* The filing of a false misbehavior report is an adverse action for retaliation purposes. *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). In

25

addition, an alleged use of excessive force "is retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Edwards v. McGrain*, No. 09-CV-582S, 2012 U.S. Dist. LEXIS 181981, at * 16, 2012 WL 6701826, at * 6 (W.D.N.Y. Dec. 26, 2012) (Schroeder, Mag. J.).  Therefore, Plaintiff has alleged facts plausibly suggesting the second element of his retaliation claim.

Regarding the third element, several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  Those factors include the temporal proximity between the protected activity and the alleged retaliatory act and statements by the defendant concerning his or her motivation.  *Id.* (citing *Colon*, 58 F.3d at 872-73).  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

Here, the complaint adequately alleges the temporal proximity factor because Plaintiff alleges that Defendants made a false report, assaulted him, and denied him medical care the same day that Plaintiff filed a grievance.  (Dkt. No. 93 ¶ 72.)  The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)).

The complaint does not, however, allege any statements by any of the Defendants suggesting that they were motivated by a desire to punish Plaintiff for filing grievances.  The complaint alleges, rather, that Defendants Ryan and Friot told Plaintiff that they were beating

him and moving him to administrative segregation because they were "tired of you Sullivan County inmates" who "think you're gangsters." (Dkt. No. 93 ¶¶ 41, 48.)

The Second Circuit has held in the context of employment law that where "timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). The Second Circuit routinely cites to employment cases when discussing retaliation in the prison law context. *See e.g. Espinal*, 558 F.3d at 129 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Thus, it is appropriate to apply the *Slattery* rule here. Here, the only connection that Plaintiff can draw between his protected conduct and the alleged adverse actions is temporal proximity. Given the scrutiny and skepticism with which courts are required to view claims of retaliation, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's retaliation claims.

### J.    Conditions of Confinement

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement when he was left "in a cold cell without the minimum basic supplies, e.g., blankets, sheets, soap or writing materials." (Dkt. No. 93 ¶ 49.) He testified to those same conditions, using almost precisely the same words and providing no more detail, at his deposition. (Dkt. No. 117-3 at 136:22-137:1.[11]) Defendants move for summary judgment of Plaintiff's conditions of confinement claim, arguing that these conditions do not rise to the level of a constitutional violation. (Dkt. No. 117-21 at 17-18.) Defendants are correct.

---

[11]    Citations to page numbers in Plaintiff's deposition transcript refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

To establish a conditions of confinement claim, a plaintiff must prove both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that the defendant's "act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities." *Id.* Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To satisfy the subjective component, the plaintiff must show that the defendant acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). A prison official demonstrates deliberate indifference to inhumane conditions of confinement where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, the conditions that Plaintiff cursorily described in his complaint and at his deposition are insufficient to raise a triable issue of fact. *See Davidson v. Murray*, 371 F. Supp. 2d 361, 371-73 (W.D.N.Y. 2005) (defendants' motion for summary judgment granted where plaintiff alleged simply that he was 'steadfastly and routinely denied' hygiene items such as toothpaste, soap, toilet tissue, and cleaning items over a three-year period but refused to provide any details of the deprivation). Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's conditions of confinement claim.

### K.    Failure to Intervene

Read broadly, the complaint asserts failure to intervene claims against Defendants Shoales, Alemar, and Schult. (Dkt. No. 93 ¶¶ 39, 62-65, 84-85.) Defendants move for summary judgment dismissing these claims. (Dkt. No. 117-21 at 18-19.)

> Law enforcement officials can be held liable under § 1983 for not
> intervening in a situation where excessive force is being used by
> another officer. Liability may attach only when (1) the officer had a
> realistic opportunity to intervene and prevent the harm; (2) a
> reasonable person in the officer's position would know that the
> victim's constitutional rights were being violated; and (3) the officer
> does not take reasonable steps to intervene.

*Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Regarding Defendant Shoales, the complaint alleges that she (1) inquired what had happened after the pepper spray incident; (2) ordered that Plaintiff be decontaminated; (3) supervised Defendant LoCotta and another officer as they escorted Plaintiff back to his cell; and (4) was present when Defendant LoCotta hit Plaintiff, who was still handcuffed, "numerous times upon the head and body." (Dkt. No. 93 ¶¶ 62-65.) Defendants argue that the failure to intervene claim against Defendant Shoales should be dismissed because "she was not present for the alleged attack." (Dkt. No. 117-21 at 18-19.) Defendants are correct regarding the pepper spray incident. However, Defendants have not addressed the allegation that Defendant Shoales was present while Defendant LoCotta used excessive force on Plaintiff. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing the failure to intervene claim against Defendant Shoales.

Regarding Defendant Alemar, the complaint alleges that he opened Plaintiff's cell door for the Defendants who allegedly used excessive force on Plaintiff on May 10, 2008. (Dkt. No. 93 ¶ 39.) Defendants argue that Defendant Alemar was not, in fact, present at Plaintiff's cell at the time of the alleged assault. (Dkt. No. 11-21 at 19.) Defendant Alemar declares that he remained at the officer's station and did not follow the other officers to Plaintiff's cell. (Dkt. No. 117-13 ¶ 10.) Plaintiff does not dispute that fact in his statement of material facts in opposition

to the motion for summary judgment. (Dkt. No. 127 ¶ 27; Dkt. No. 117-20 ¶ 27.) The section of

Plaintiff's memorandum of law in opposition to the motion for summary judgment discussing

Defendant Alemar does not address the failure to intervene claim. (Dkt. No. 127-1 at 17-18.)

The evidence before the Court does not establish that Defendant Alemar had a realistic

opportunity to intervene and prevent the harm allegedly caused by the other officers on May 10,

2008. Therefore, I recommend that the Court grant Defendants' motion for summary judgment

and dismiss the failure to intervene claim against Defendant Alemar.

 Regarding Defendant Schult, the complaint alleges that he:

> exercised deliberate indifference to plaintiff's health and safety when
> he intentionally failed to respond to plaintiff's complaint of being
> abused physically . . . by Chenango County Correctional Facility's
> employees. Defendant Schult's deliberate indifference to plaintiff's
> health and safety had further been openly demonstrated when he
> deliberately failed to investigate the allegations contained within
> plaintiff's complaint(s) of being assaulted by Correctional Officers
> and by allowing him to remain in administrative segregation without
> the minimum basic supplies afforded to other inmates housed on the
> unit with the same status.

(Dkt. No. 93 ¶¶ 84-85.) "[A]n allegation that an official ignored a prisoner's letter of protest and

request for investigation of allegations made therein is insufficient to hold that official liable for

the alleged violations." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). "There is

. . . no constitutional right to an investigation by government officials." *Lewis v. Gallivan*, 315 F.

Supp. 2d 313, 317 (W.D.N.Y.2004) (quoting *Stone v. Dept. of Investigation*, 1992 U.S. Dist.

LEXIS 1120, 1992 WL 25202 (S.D.N.Y. Feb. 4, 1992) and *Gomez v. Whitney*, 757 F.2d 1005,

1006 (9th Cir.1985)) (granting defendant's motion for summary judgment dismissing prisoner's

claim against inspector general for failure to investigate alleged assault). Therefore, I

recommend that the Court grant Defendants' motion for summary judgment and dismiss the

claims against Defendant Schult.

**L.     Medical Care**

Plaintiff alleges that Defendant Locke violated his constitutional right to receive adequate medical care when she refused to fulfill's Plaintiff's requests for follow-up care at a hospital emergency room and refused to provide him with pain medication.  (Dkt. No. 93 ¶¶ 78-79.) Plaintiff argues that Defendant Locke disregarded and failed to adequately treat injuries to his back, right knee, and left eye, which ultimately resulted in a permanent scar above his eye and degeneration to his knee.  (Dkt. No. 127-1 at 24.)  Defendants move for summary judgment of this claim, arguing that Plaintiff can establish neither the objective nor the subjective prong of his medical care cause of action.  (Dkt. No. 117-21 at 20-23.)

Prison officials must ensure  that inmates receive adequate medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). There are two elements to a prisoner's claim that prison officials violated his or her right to receive adequate medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted).   "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted).

Regarding the objective prong, a "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (citations omitted), *accord Hathaway v. Coughlin*, 37 F.3d

63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03. "Courts in this circuit have almost uniformly found . . . knee injuries to be insufficient to . . . support a deliberate indifference claim." *Johnson v. Wright*, 477 F. Supp. 2d 572, 575-76 (W.D.N.Y. 2007) (punctuation omitted) (collecting cases). Similarly, the types of lacerations that Plaintiff describes do not rise to the level of a "serious medical condition." *See Rickett v. Orsino*, No. 10 Civ. 5152 (CS) (PED), 2013 U.S. Dist. LEXIS 42544, at * 61-64, 2013 WL 1176059, at *17 (S.D.N.Y. Feb. 20, 2013) (collecting cases). Therefore, Plaintiff has not established the objective prong of his medical deliberate indifference claim and Defendants are entitled to summary judgment.

Even if Plaintiff could raise a triable issue of fact as to the objective prong, he could not raise a triable issue as to the subjective prong. Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Id*. at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d

at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* at 106. Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). Here, Defendant Locke has filed a declaration describing the care that she provided to Plaintiff immediately after the incidents on May 10 and 19, 2008. (Dkt. No. 117-10.) Defendant Locke provided thorough treatment for the injuries that she observed. *Id.* She provided Motrin for Plaintiff's pain. *Id.* ¶¶ 7, 9. Other than his general allegations that Defendant Locke was deliberately indifferent, Plaintiff has not submitted any evidence raising a triable issue of fact. Therefore, I recommend that the Court grant Defendants' motion for summary judgment of Plaintiff's medical deliberate indifference claim.

**M.      Access to Courts**

Plaintiff alleges that Defendant LoCotta interfered with his right of access to the courts by not allowing him to complete an authorized phone call to his attorney. (Dkt. No. 93 ¶ 80.) Defendants move for summary judgment dismissing this cause of action, arguing that Plaintiff has failed to allege that he suffered any actual injury. (Dkt. No. 117-21 at 23-24.) Defendants are correct.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)). This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F. Supp. 713, 725 (S.D.N.Y. 1993) (citing *Pickett v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)). To state a claim for denial of access to the courts, a plaintiff must allege facts plausibly suggesting that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.). Here, Plaintiff has alleged no actual injury. (Dkt. No. 93.) Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's access to courts cause of action.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 117) be **GRANTED IN PART AND DENIED IN PART**. It is recommended that the Court (1) dismiss Plaintiff's state law claims as time-barred and for failure to timely serve a notice of claim; (2) dismiss all claims against deceased Defendant Friot with prejudice; (3) dismiss all claims against Defendant Parker for lack of personal involvement and terminate him from this action; (4) dismiss all claims against Defendant Loughren for lack of personal involvement and terminate him from this action; (5) dismiss Plaintiff's equal protection claim; (6) dismiss Plaintiff's procedural due process claim; (7) dismiss Plaintiff's retaliation claims; (8) dismiss Plaintiff's conditions of confinement claims; (9) dismiss the failure to intervene claims against Defendants

Alemar and Schult; (10) dismiss the medical care claim against Defendant Locke and terminate her from this action; and (11) dismiss Plaintiff's access to courts claim. It is recommended that the Court deny the motion as to (1) the excessive force claims against Defendants Ryan, Hackett, Chesebro, Moscato, Rotundo, and DeMon regarding the May 10, 2008, incident; (2) the excessive force claim against Defendant LoCotta regarding the May 19, 2008, incident; and (3) the failure to intervene claim against Defendant Shoales; and it is further

**RECOMMENDED** that the Court schedule this matter for an evidentiary hearing on the issue of the exhaustion of administrative remedies regarding the alleged May 19, 2008, use of pepper spray, the alleged conditions of confinement, and the alleged May 19, 2008, phone call incident; and it is further

**ORDERED** that the Clerk correct the caption to list Defendant "Sgt. Shoale" as "Sgt. Tonya Shoales;" and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Crippen v. Town of Hempstead*, No. 07-CV-3478 (JFB) (ARL), 2009 U.S. Dist. LEXIS 24820, 2009 WL 803117 (W.D.N.Y. Mar. 25, 2009); *Edwards v. McGrain*, No. 09-CV-582S, 2012 U.S. Dist. LEXIS 181981, 2012 WL 6701826 (W.D.N.Y. Dec. 26, 2012); *Gssime v. Burge*, No. 6:08-CV-6404 (MAT), 2013 U.S. Dist. LEXIS 94827, 2013 WL 3423816 (W.D.N.Y. July 8, 2013); *Lacy v. Tyson*, No. 1:07-cv-00381-LJO-GSA-PC, 2012 U.S. Dist. LEXIS 134932, 2012 WL 4343837 (E.D. Cal. Sept. 20, 2012); and *Rickett v. Orsino*, No. 10 Civ. 5152 (CS) (PED), 2013 U.S. Dist. LEXIS 42544, 2013 WL 1176059 (S.D.N.Y. Feb. 20, 2013).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: September 13, 2013
      Syracuse, New York

                                   Thérèse Wiley Dancks
                                   United States Magistrate Judge