**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANGELO JOHNSON,**

                                                **Plaintiff,**

                    vs.                                                **9:11-cv-00531**
                                                                            **(MAD/TWD)**

**MICHAEL A. SCHIFF, Sheriff of Sullivan County**
**Jail, sued in his individual and official capacities;**
**LT. WILLIAM DEVITO, Sullivan County Jail, sued in**
**his individual and official capacity; THOMAS LOUGHERN,**
**Sheriff of Chenango County Correctional Facility, sued in his**
**individual and official capacities; SGT. FRIOT, Chenango**
**County Correctional Facility, sued in his individual and official**
**capacity; SGT. SHOALE, Chenango County Correctional Facility,**
**sued in her individual and official capacity; SGT. RYAN, Chenango**
**County Correctional Facility, sued in his individual and official**
**capacity; C.O. CHESEBRO, Chenango County Correctional Facility,**
**sued in her individual and official capacity; C.O. MOSCATO, Chenango**
**County Correctional Facility, sued in his individual and official capacity;**
**C.O. ALEMAR, Chenango County Correctional Facility, sued in his**
**individual and official capacity; C.O. ROTUNDO, Chenango County**
**Correctional Facility, sued in his individual and official capacity; C.O.**
**DEMUN, Chenango County Correctional Facility, sued in his individual**
**and official capacity; C.O. PARKER, Chenango County Correctional**
**Facility, sued in his individual and official capacity; C.O. LACOTTA,**
**Chenango County Correctional Facility, sued in his individual and official**
**capacity; C.O. JOHN DOE, Chenango County Correctional Facility, sued**
**in his individual and official capacity; R.N. JOANNE LOCKE, Chenango**
**County Correctional Facility, sued in her individual and official capacities;**
**C.O. HACKETT, Chenango County Correctional Facility, sued in his**
**individual and official capacity; LT. SCHULT, Chenango County**
**Correctional Facility, sued in his individual and official capacity,**

                                                **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**ANGELO JOHNSON**
**08-A-6593**
Downstate Correctional Facility
Box F
Fishkill, New York 12524
Plaintiff *pro se*

**SULLIVAN COUNTY ATTORNEY'S OFFICE**      **SAMUEL S. YASGUR, ESQ.**
100 North Street
Monticello, New York 12701
Attorneys for Defendant Michael A. Schiff

**DREW, DAVIDOFF LAW FIRM**      **MICHAEL DAVIDOFF, ESQ.**
13 Liberty Street
PO Drawer 1040
Monticello, New York 12701
Attorneys for Defendant Lt. William DeVito

**LEVENE, GOULDIN LAW FIRM**      **MARIA E. LISI-MURRAY, ESQ.**
Vestal Office
450 Plaza Drive
Vestal, New York 13850
Attorneys for Defendants Thomas Loughern,
Sgt. Friot, Sgt. Shoale, Sgt. Ryan, C.O. Chessebro,
C.O. Moscato, C.O. Alemar, C.O. Rotundo, C.O. DeMun,
C.O. Parker, C.O. LaCotta, C.O. John Doe, R.N. Joanne
Locke, C.O. Hackett, and Lt. Schult

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, claiming that

Defendants violated his constitutional rights by transferring him from the Sullivan County Jail to

the Chenango County Jail, where he was subjected to excessive force and inadequate medical

care.  On September 10 and 13, 2013, Magistrate Judge Dancks issued two Report-

Recommendations and Orders, recommending that the Court (1) grant Defendant Schiff's motion

for summary judgment and terminate him from this action; (2) deny Plaintiff's motion to strike;

(3) deny Defendant DeVito's motion for summary judgment; (4) *sua sponte* dismiss the official

capacity claims against Defendant DeVito; and (5) grant in part and deny in part the Chenango

County Defendants' motion for summary judgment.  *See* Dkt. Nos. 147 & 149.  On September 26,

2013, Defendant DeVito objected to the portion of the Report-Recommendation and Order recommending that the Court deny his motion for summary judgment. *See* Dkt. No. 152.

Currently before the Court are Defendants' motions for summary judgment, *see* Dkt. Nos. 117, 120, 122, and Plaintiff's motion to strike portions of a reply brief. *See* Dkt. No. 136.

## II. BACKGROUND

### A.    Relevant facts

Plaintiff alleges that during the summer of 2007, he was assaulted by staff at the Chenango County Jail. *See* Dkt. No. 120-5 at 60:9-14. He alleges that the staff threatened him that if he ever returned to the facility, "there was going to be a problem." Dkt. No. 117-3 at 43:10-44:10. By May 2008, Plaintiff was a pretrial detainee housed at the Sullivan County Jail. *See* Dkt. No. 93 ¶ 3. The Sullivan County Jail is operated in conformity with the rules, regulations, and directives of the New York State Commission of Corrections ("COC"). *See* Dkt. No. 122-2 ¶ 7; Dkt. No. 129 ¶ 7.3. The COC mandates a maximum number of inmates that can be housed at the Sullivan County Jail at any given time. *See* Dkt. No. 122-2 ¶ 9; Dkt. No. 129 ¶ 9. Occasionally, the Sullivan County Jail must temporarily transfer inmates to another facility in order to remain under the population cap imposed by the COC. *See* Dkt. No. 122-2 ¶ 10; Dkt. No. 129 ¶ 10. Any temporary transfer of any inmate from Sullivan County Jail to another facility must be approved in advance by the COC. *See* Dkt. No. 122-2 ¶ 11; Dkt. No. 129 ¶ 11. On April 28, 2008, the COC issued an order designating the "Chenango County Jail as a substitute jail for the Sullivan County Jail for the confinement of unsentenced males." *See* Dkt. No. 122-2 ¶ 14; Dkt. No. 129 ¶ 14.

On May 9, 2008, Plaintiff was informed by non-defendant Corporal Ciangelo that he was going to be moved from the Sullivan County Jail to the Chenango County Jail. *See* Dkt. No. 93 ¶ 30. Plaintiff asked Corporal Ciangelo and non-defendant Sergeant Danzer "not to transfer him out, noting that he . . . had previous problems at Chenango County and feared for his personal health and safety to say the very least, due to prior conflicts between [P]laintiff and correctional staff at that facility." *Id.* ¶ 31.

At his deposition, Plaintiff testified that when he told Sergeant Danzer that he feared for his safety if he was transferred to the Chenango County Jail, Sergeant Danzer said "[a]ll I can do is . . . bring it to [Defendant] Lieutenant DeVito's attention because he's . . . the only one that can stop the movement now." *See* Dkt. No. 117-3 at 41:23-42:2; Dkt. No. 128 ¶ 19. Plaintiff testified that after this conversation, he called his attorney. *See* Dkt. No. 117-3 at 42:6. Plaintiff testified that his attorney told him that he had spoken to Defendant DeVito and relayed Plaintiff's fears, but that "DeVito was not gonna stop the move." *Id.* at 42:10-13. A few minutes after Plaintiff got off the phone, Sergeant Danzer informed him that "DeVito is not gonna stop the movement." *Id.* at 43:5-6.

Plaintiff was transferred to the Chenango County Jail that day. *See* Dkt. No. 122-2 ¶ 18; Dkt. No. 129 ¶ 18. Plaintiff testified that he saw Defendant DeVito as he was being transferred, told him that he was "in great fear of my safety and health," and asked him not to transfer him. *See* Dkt. No. 117-3 at 44:5-10. Plaintiff testified that Defendant DeVito did not say anything. *Id.* at 44:10. Plaintiff believed that Defendant DeVito was aware of Plaintiff being assaulted in 2007 at the Chenango County Jail because, although Plaintiff never discussed it with him personally, New York regulations "require that all incident reports [be] recorded and . . . the administration should be aware, at least have constructive knowledge." *See* Dkt. No. 120-5 at 59:21-60:8.

Plaintiff alleges that he was subjected to excessive force and denied medical care on May 10, 2008, at the Chenango County Jail. *See* Dkt. No. 93 ¶¶ 38-55.

Plaintiff filed the original complaint in this action on May 11, 2011. *See* Dkt. No. 1. Thereafter, Plaintiff filed an amended complaint, which is the operative pleading. *See* Dkt. No. 93. Defendants have answered the amended complaint, *see* Dkt. Nos. 100, 104, and 105, and they now move for summary judgment. *See* Dkt. Nos. 117, 120 and 122. Moreover, Plaintiff has moved to strike portions of Defendant Schiff's reply. *See* Dkt. No. 136.

**B.      Magistrate Judge Dancks' September 10, 2013 Report-Recommendation and Order**

In her September 10, 2013 Report-Recommendation and Order, Magistrate Judge Dancks recommended that the Court first find that Defendant Schiff, the Sullivan County Sheriff, lacked any personal involvement in the alleged unconstitutional conduct. *See* Dkt. No. 147 at 9-10. The report found that Plaintiff's transfer was handled by jail administrators, staff and corrections officers, and that Plaintiff's conclusory allegations regarding his involvement in the transfer were insufficient to create a genuine issue of material fact. *See id.* Further, Magistrate Judge Dancks also found that the Court should dismiss Plaintiff's official capacity claims against Defendant Schiff because Plaintiff provided no evidence "that Defendant Schiff (in his official capacity) was on actual or constructive notice that any failure to train jail employees to take inmates' concerns into account before transferring them led to any violation of constitutional rights." *See id.* at 11.

Next, the Report-Recommendation and Order recommended denying Plaintiff's motion to strike Defendant Schiff's reply brief and Smith Declaration because they simply reiterated arguments made in the moving papers regarding personal involvement and the exhaustion of

administrative remedies and respond to Plaintiff's arguments regarding customs and policies. *See id.* at 12.

As to Defendant DeVito's motion for summary judgment, Magistrate Judge Dancks recommended that the Court deny Defendant DeVito's statute of limitations argument. *See id.* at 13-14. The report found that application of the prison mailbox rule renders the complaint timely, rejecting the argument that the prison mailbox rule should not apply because Plaintiff had contact with an attorney during the time in question. *See id.* at 14-15 & n.11. Next, Magistrate Judge Dancks found that Plaintiff has raised a triable issue of fact as to whether his failure to exhaust his administrative remedies should be excused due to special circumstances. *See id.* at 15-19. The report found that it is not clear whether Plaintiff had available administrative remedies at Sullivan County Jail because he was immediately transferred to Chenango County Jail and, upon his return to Sullivan a few weeks later, the Grievance Coordinator informed Plaintiff that it was too late to file a grievance. *See id.* at 18. In light of this finding, Magistrate Judge Dancks recommended that the Court schedule this case for an evidentiary hearing on the issue of exhaustion of administrative remedies. *See id.*

Next, Magistrate Judge Dancks recommended that the Court find that issues of fact preclude the Court from granting Defendant DeVito's motion on personal involvement grounds. *See id.* at 19-20. The report found that Defendant DeVito failed to submit an affidavit or declaration on his own behalf in support of this claim. *See id.* at 19. Further, the Smith Declaration does not state any basis for his personal knowledge of the issues and the exhibit attached to the declaration titled "Notification of Inmate Transfer" was not authenticated, and, therefore, not admissible. *See id.* at 20. Finally, even if the Notification of Inmate Transfer had been authenticated, the report found that it would still not establish Defendant DeVito's lack of

personal involvement because it would simply demonstrate that Defendant DeVito was not the "reporting officer." *See id.* at 21.

Finally, Magistrate Judge Dancks recommended that the Court deny Defendant DeVito's motion on the merits as well. *See id.* at 22-27. The report found that Plaintiff's allegation that "Defendant DeVito had received repeated requests, orally, from both plaintiff and his attorney, for him not to be transferred-out to Chenango County Correctional Facility due to prior conflicts between plaintiff and Correctional Officials at that facility and refused to act upon their requests," was sufficient to state a failure to protect claim. *See id.* at 23 (citation omitted). The report notes that, although Plaintiff has contradicted himself, he has still provided sufficient proof to create an issue of fact and that these contradictions create credibility issues not appropriately disposed of on summary judgment. *See id.* at 25-27. Lastly, Magistrate Judge Dancks recommended that the Court *sua sponte* dismiss Plaintiff's official capacity claims against Defendant DeVito. *See id.* at 27.

**C.      Magistrate Judge Dancks' September 13, 2013 Report-Recommendation and Order**

In her September 13, 2013 Report-Recommendation and Order, Magistrate Judge Dancks recommended that the Court grant in part and deny in part the Chenango County Defendants' motion for summary judgment. *See* Dkt. No. 149. Specifically, the report recommended as follows: (1) dismiss Plaintiff's state law claims as time-barred and for failure to timely serve a notice of claim; (2) dismiss all claims against deceased Defendant Friot with prejudice; (3) dismiss all claims against Defendant Parker for lack of personal involvement and terminate him from this action; (4) dismiss all claims against Defendant Loughren for lack of personal

involvement and terminate him from this action; (5) dismiss Plaintiff's equal protection claim; (6) dismiss Plaintiff's procedural due process claim; (7) dismiss Plaintiff's retaliation claims; (8) dismiss Plaintiff's conditions of confinement claims; (9) dismiss the failure to intervene claims against Defendants Alemar and Schult; (10) dismiss the medical care claim against Defendant Locke and terminate her from this action; and (11) dismiss Plaintiff's access to courts claim. *See id.* Further, the report recommended that the Court deny the motion for summary judgment as to (1) the excessive force claims against Defendants Ryan, Hackett, Chesebro, Moscato, Rotundo, and DeMon regarding the May 10, 2008 incident; (2) the excessive force claim against Defendant LoCotta regarding the May 19, 2008 incident; and (3) the failure to intervene claim against Defendant Schoales. *See id.* Finally, the report recommended that the Court schedule an evidentiary hearing on the issue of exhaustion of administrative remedies regarding the alleged May 19, 2008 use of pepper spray, the alleged conditions of confinement, and the alleged May 19, 2008 phone call incident. *See id.*

### D. Defendant DeVito's objections

First, Defendant DeVito objects to the application of the prison mailbox rule. *See* Dkt. No. 152 at 4. Defendant DeVito argues that, "[w]hile admittedly, Attorney Levine never formally represented Plaintiff, Plaintiff did have attorney Levine's advice and therefore was not dependent on the prison mail system." *See id.* at 4-5. Defendant DeVito claims that Magistrate Judge Dancks incorrectly asserted that he failed to provide authority for his position and directs the Court to his reply brief in which he cited *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001) and *Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). *See id.* at 5-6.

Next, Defendant DeVito argues that a hearing is not necessary to determine Plaintiff's failure to exhaust his administrative remedies. *See id.* at 6-7. Defendant DeVito asserts that, "[w]hile it is true Plaintiff was transferred from one County facility to another County facility, and not from one State facility to another State facility where the grievance procedure is the same, Plaintiff still did file a grievance in Chenango County grieving his transfer in which grievance Plaintiff did not raise the claim of Defendant DeVito's alleged failure to protect him." *See id.* at 7. He argues that Plaintiff could have and should have included his claim against Defendant DeVito in his grievance submitted at Chenango County Jail. *See id.* at 7-8.

Next, Defendant DeVito asserts that "[t]he Magistrate Judge was incorrect when she concluded, after citing portions of Plaintiff's deposition testimony, that Defendant DeVito had been advised just prior to the transfer as to the alleged prior assaults on Plaintiff that occurred during the 2007 transfer to the Chenango County Jail." *See id.* at 8. Defendant DeVito further alleges that Magistrate Judge Dancks "was incorrect to conclude that the contradictions in the plaintiff's deposition testimony provided a basis for an issue of fact thereby denying defendant DeVito's motion regarding personal involvement." *See id.*

Finally, Defendant DeVito claims that Magistrate Judge Dancks incorrectly concluded that questions of fact as to his personal involvement preclude granting his motion for summary judgment. *See id.* at 10-11. First, without citation, Plaintiff concludes the report erred in finding that the Smith Declaration was deficient because it did not include language that it was based on "personal knowledge." *See id.* at 10. He argues that "[t]here is no necessity to have stated any basis for his personal knowledge other than the fact he was the Jail Administrator fully responsible for all inmates while at the Sullivan County Jail facility." *See id.* at 11. Further, Defendant DeVito asserts that "Judge Dancks' conclusion that the copy of the Notification of

Inmate Transfer . . . is not authenticated, is an overly technical conclusion." *See id.* "Not only was there no objection from the plaintiff as to this document, but such jail documents which are copies of documents sent to the New York State Commission of Corrections are by their very nature business records prepared by the Sullivan County Jail and kept in the ordinary course of the business of operating a County jail by the Jail Administrator. The Notification of Inmate Transfer is a copy of a form, the original of which is sent to the New York State Commission of Corrections as is so stated on the Notification form." *See id.*

### III. DISCUSSION

**A.**     **Standard of review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of

material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (qquoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations

for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." 28 U.S.C. § 636(b)(1).


## B.     Prison Mailbox Rule

Under the prison-mailbox rule, the court deems a *pro se* prisoner's complaint filed on the date that the prisoner delivered the complaint to prison officials for transmittal to the court. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (citing *Houston v. Lack*, 487 U.S. 266, 270, 108 S. Ct. 2379, 2382, 101 L. Ed. 2d 245 (1988)). "This 'prison mailbox' rule is justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court." *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (citation omitted).

In the present matter, Defendant DeVito argues that the prison mailbox rule should not apply because Plaintiff "had contact with attorney Alan D. Levine." *See* Dkt. No. 152 at 4 (citing Dkt. No. 132 at 7-8). Defendant DeVito admits, however, that although "Attorney Levine never formally represented Plaintiff, Plaintiff did have attorney Levine's advice and therefore was not dependent on the prison mail system." *See id.* at 4-5.

Contrary to Defendant DeVito's arguments, Magistrate Judge Dancks correctly determined that the prison mailbox rule should apply. Although Defendant DeVito cites to correspondence between Plaintiff and Mr. Levine, this correspondence indicates that Mr. Levine refused to take Plaintiff's case. *See* Dkt. No. 35 at 14-18. Further, Mr. Levine's letter to Plaintiff is dated May 2, 2011 and informs Plaintiff that his claims have a three-year statute of limitations. *See id.* at 18. The material cited by Defendant DeVito establishes that Plaintiff was not represented by Mr.

Levine at the time he gave his complaint to prison officials to place in the prison mail system; and, therefore, the Court finds that Defendant DeVito's argument is without merit.

Defendant DeVito cites to language from *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001) in support of his position. This language states that the "'prison mailbox' rule is justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court." *Id.* This language, however, does not support Defendant DeVito's position because, quite simply, Plaintiff lacked counsel and was dependent on the prison mail system to file his complaint.

Based on the foregoing, the Court finds that Magistrate Judge Dancks correctly determined that Plaintiff's complaint was timely filed in light of the prison mailbox rule.

**C.      Hearing to Determine Availability of Administrative Remedies**

Defendant DeVito argues that a hearing is not necessary to determine whether administrative remedies were available to Plaintiff, thereby excusing his failure to exhaust. *See* Dkt. No. 152 at 6-7. Defendant DeVito claims that the fact that the Sullivan County Jail's grievance procedure does not explicitly provide instructions for how to file a grievance when a prisoner is transferred to another facility is not a special circumstance justifying Plaintiff's failure to file a grievance or fully exhaust. *See id.*

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement

applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Second Circuit has recognized three situations where a prisoner's failure to exhaust may be excused: "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).

The Sullivan County Jail has a grievance procedure. *See* Dkt. No. 120-8 at ¶ 19. Under the procedure, inmates must first attempt to informally resolve any grievance with their housing area officer. *See* Dkt. No. 120-12. If the issue cannot be informally resolved, the inmate must ask in writing to be interviewed by the Grievance Coordinator or his assistant. *Id.* The Grievance Coordinator reviews the grievance and issues a written determination within five business days. *Id.* Within two days of receiving the Grievance Coordinator's decision, the inmate may appeal to the Jail Administrator. *Id.* The Jail Administrator must respond in writing within two business days of receiving the appeal. *Id.* Within three days of receiving the Jail Administrator's response, the inmate may appeal to the State Commission of Correction. *Id.* The Citizens' Policy and Complaint Review Council must issue a written determination within twenty business days of receiving the appeal. *Id.* The Sullivan County Jail's grievance procedure does not describe what inmates who are transferred to another facility before they are able to file a grievance must do in order to exhaust their administrative remedies. *Id.*

Defendant DeVito's arguments are without merit.  Plaintiff was transferred from one county facility to another, thereby depriving him of the opportunity to file a grievance prior to his departure.  Further, the grievance procedure at Sullivan does not explicitly provide a means of filing and exhausting a grievance once an inmate has been transferred.  In fact, several of the steps required to fully exhaust would appear impossible if the inmate is transferred to a different facility prior to filing a grievance or before the grievance process has concluded.  Further, unlike a transfer between different facilities run by the Department of Corrections and Community Supervision, where each facility is run in compliance with the laws and regulations of New York State, county facilities are subject to varying policies, enacted by the jurisdiction in which that facility resides.

In *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422 (E.D.N.Y. 2010), the district court held that the inmate was excused from exhausting his administrative remedies when he was transferred two days after the incident from a county facility to a state facility.  Specifically, the court noted that, "[g]iven that the grievance procedure in the Inmate Handbook permits an inmate five days to file the grievance, and the Plaintiff was transferred to NCCF within two days of the October 24th Attack, the Court finds that the Plaintiff did not have a meaningful opportunity to pursue the administrative remedy while still at the SCCF.  This is consistent with the view expressed by other courts, including the Second Circuit, that an administrative remedy may properly be considered 'unavailable' if the act or occurrence that gives rise to the claim occurs shortly before the inmate is transferred."  *Id.* at 433-34 (citing cases).  Further, the court noted that, unlike transfers between two state-run facilities,

> New York County-run facilities, such as the SCCF and NCCF, are
> governed by 9 N.Y.C.R.R. 7032.4, which provides that
> "[i]nstructions for filing a grievance shall be included in the facility
> rules and information."  9 N.Y.C.R.R. 7032.4(b).  Thus, at New

> York County-run facilities, the grievance procedure for inmates to
> follow is specific to that particular facility. At the SCCF, the
> Inmate Handbook states that the purpose of the Inmate Handbook is
> to "inform [the inmates] of the rules and procedures governing this
> facility." (Inmate Handbook at 3 (emphasis added).) There is no
> indication, either in the governing law or the Inmate Handbook, that
> the Plaintiff was required to file a grievance at the SCCF from the
> NCCF, and there is certainly nothing in the record to indicate that
> an uncounseled prisoner would be aware if this was indeed a
> requirement.

*Id.* at 434-35. As such, the court found that special circumstances excused Plaintiff's failure to

exhaust his administrative remedies. *See id.* at 435.

In the present matter, the Court finds that Magistrate Judge Dancks correctly determined

that an evidentiary hearing is necessary to determine whether Plaintiff had a meaningful

opportunity to exhaust his administrative remedies. *See Hartry*, 755 F. Supp. 2d at 434-35.

Defendant DeVito is correct that Plaintiff did not include in his grievance filed in Chenango

County the claim that Defendant DeVito failed to protect him from harm by transferring him to

the Chenango County Jail. *See* Dkt. No. 152 at 7. Defendant DeVito, however, works for the

Sullivan County Jail, not the Chenango County Jail; and, therefore, it is unclear why Plaintiff

would include this claim in his grievance to Chenango County, which has no control or authority

over Defendant DeVito's actions.

The cases upon which Defendant DeVito rely do not provide support for his position. In

*Rodriguez v. D.A. Senkowski*, 103 F. Supp. 2d 131 (N.D.N.Y. 2000), the district court remitted to

the magistrate judge the matter for a determination of whether the plaintiff's transfer to a different

facility was relevant for purposes of determining exhaustion. *See id.* at 133-34. Unlike the

present situation, *Rodriguez* involved an inmate's transfer between two different state facilities

under the control of DOCCS. *See id.*

Based on the foregoing, the Court finds that Magistrate Judge Dancks correctly determined that the Court should hold an evidentiary hearing to determine whether special circumstances excuse Plaintiff's failure to exhaust.

**D.      Personal Involvement**

Defendant DeVito argues that Magistrate Judge Dancks incorrectly determined that questions of fact preclude the Court from granting the motion for summary judgment based on his lack of personal involvement. *See* Dkt. No. 152 at 8. "The Magistrate Judge was incorrect when she concluded, after citing portions of Plaintiff's deposition testimony, that Defendant DeVito had been advised just prior to the transfer as to the alleged prior assaults on plaintiff that occurred during the 2007 transfer to the Chenango County Jail. The Magistrate Judge was incorrect to conclude that the contradictions in the plaintiff's deposition testimony provided a basis for an issue of fact[.]" *See id.*

Contrary to Defendant DeVito's assertions, Plaintiff's deposition transcript clearly creates an issue of fact as to Defendant DeVito's personal involvement. Specifically, Plaintiff testified that his attorney "informed me that he spoke to Lieutenant DeVito, which was in charge. He said he brought to Lieutenant DeVito my affairs and the sit[uation] and everything that I told him but DeVito was not going to stop the move." *See* Dkt. No. 117-3 at 43. Further, Plaintiff testified that he informed Sergeant Danzer about his fears, and that Sergeant Danzer told Plaintiff that he would bring his concerns to Defendant DeVito's attention. *See id.* at 41-44. Thereafter, Sergeant Danzer and Corporal Ciangelo informed Plaintiff that Defendant DeVito was not going to stop his transfer. *See id.*

Further, Magistrate Judge Dancks also correctly determined that the exhibit titled "Notification of Inmate Transfer," which lists the "name of reporting officer" as "Danzer" does not prove Defendant DeVito's lack of personal involvement. *See* Dkt. No. 147 at 20-21. It merely shows that Defendant DeVito was not the "reporting officer," but does not demonstrate that the "reporting officer" is solely responsible for transfer decisions. *See id.* In fact, Plaintiff's testimony indicating that Sergeant Danzer told him that Defendant DeVito was the only person who could stop his transfer leads the Court to the exact opposite conclusion.

Based on the foregoing, the Court finds that Magistrate Judge Dancks correctly determined that questions of fact preclude the Court from granting Defendant DeVito's motion for summary judgment.

## E.     Deliberate Indifference

Defendant DeVito argues that, on the merits, he is entitled to summary judgment on Plaintiff's failure to protect claim. *See* Dkt. No. 152 at 10. Defendant DeVito asserts that the report incorrectly determined that the Court should not accept the allegations set forth in Jail Administrator Smith's Affidavit because the affidavit "did not state any basis for person knowledge." *See id.* Further, Defendant DeVito asserts that the "Judge Dancks' conclusion that the copy of the Notification of Inmate Transfer . . . is not authenticated, is an overly technical conclusion." *See id.* at 11.

To prove a failure to protect claim, a plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials exhibited deliberate indifference to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is a conscious disregard of a substantial risk of serious harm. *Id.* at 835. "A general,

conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can be drawn that such inmate's safety is actually at risk." *Wilson v. Campbell*, No. 06-CV-0175 (GLS-RFT), 2008 WL 902187, * 5 (N.D.N.Y. Mar. 31, 2008). Thus, a correctional official who disregards such a statement has not been deliberately indifferent to conditions posing a substantial risk of harm. *Id.* Rather, in order to demonstrate deliberate indifference, "an inmate must inform a correctional official of the basis for his belief" that there is "a substantial threat to his safety before the correctional official can be charged with deliberate indifference." *Sims v. Bowen*, No. 96-CV-656 RSP/DRH, 1998 WL 146409, * 3 (N.D.N.Y. Mar. 23, 1998).

Regarding the sufficiency of the evidence and Plaintiff's claims, the Court finds that Magistrate Judge Dancks correctly determined that Defendant DeVito's motion should be denied. Contrary to Defendant DeVito's assertions, Plaintiff does assert in his deposition that his attorney spoke with Defendant DeVito about his concerns, and that Sergeant Danzer did the same, yet Defendant DeVito failed to prevent the transfer. *See* Dkt. No. 147 at 25-26 (citing portions of Plaintiff's transcript in which he testifies about the various instances Defendant DeVito was informed about Plaintiff's concerns and that he still failed to prevent the transfer). As such, Magistrate Judge Dancks correctly determined that Defendant DeVito's motion for summary judgment should be denied.

Moreover, although the Court believes that Magistrate Judge Dancks correctly determined that the Court should not accept the allegations in the Smith Affidavit, the Court finds that the Smith Affidavit does not establish that Defendant DeVito was not personally involved in the alleged unconstitutional conduct. The Smith Affidavit states that "[t]he fact that Plaintiff may have objected to being transferred to the Chenango County Jail did not constitute any evidence or

information that the Chenango County Jail would not be an appropriate outboarding facility." *See* Dkt. No. 120-8 at ¶ 8. The affidavit further states that the Sullivan County Sheriff's Office "had no independent objective indication that the Chenango County Jail would not be a suitable Jail in which to outboard Plaintiff." *See id.* at ¶ 6. These statements, however, are nothing more than conclusory assertions that the Chenango County Jail was a suitable jail to outboard prisoners. No where in the affidavit does it state that Defendant DeVito had no reason to believe that Plaintiff would be in danger if transferred to Chenango County. Accepting Plaintiff's allegations as true, he contends that both his attorney and Sergeant Danzer informed Defendant DeVito that Plaintiff had been subject to abuse by corrections officers at Chenango County Jail during a previous stay and that they threatened his well-being if he ever returned to the facility. Nothing in the affidavit contradicts these facts. As such, the Smith Affidavit does not support Defendant DeVito's position.

Further, as discussed, the Notification of Inmate Transfer does not establish that Defendant DeVito was not personally involved in the alleged unconstitutional conduct. It simply provides that Sergeant Danzer was the "reporting officer," but it does not demonstrate that the "reporting officer" is solely responsible for transfer decisions.

Based on the foregoing, the Court finds that Magistrate Judge Dancks correctly determined that the Court should deny Defendant DeVito's motion on this ground.

**F.      Remaining motions**

None of the remaining parties submitted objections to Magistrate Judge Dancks' September 10 and 13 recommendations. Having carefully reviewed the Report and Recommendations, the parties submissions and the applicable law, the Court finds that Magistrate

Judge Dancks correctly recommended that the Court should (1) dismiss Plaintiff's state law claims as time-barred and for failure to timely serve a notice of claim; (2) dismiss all claims against deceased Defendant Friot with prejudice; (3) dismiss all claims against Defendant Parker for lack of personal involvement and terminate him from this action; (4) dismiss all claims against Defendant Loughren for lack of personal involvement and terminate him from this action; (5) dismiss Plaintiff's equal protection claim; (6) dismiss Plaintiff's procedural due process claim; (7) dismiss Plaintiff's retaliation claims; (8) dismiss Plaintiff's conditions of confinement claims; (9) dismiss the failure to intervene claims against Defendants Alemar and Schult; (10) dismiss the medical care claim against Defendant Locke and terminate her from this action; (11) dismiss Plaintiff's access to courts claim; and (12) dismiss Plaintiff's official capacity claims against Defendant DeVito.  Further, the report correctly determined that the Court should deny the motion for summary judgment as to (1) the excessive force claims against Defendants Ryan, Hackett, Chesebro, Moscato, Rotundo, and DeMon regarding the May 10, 2008 incident; (2) the excessive force claim against Defendant LoCotta regarding the May 19, 2008 incident; and (3) the failure to intervene claim against Defendant Schoales.  Moreover, the report correctly determined that the Court should schedule an evidentiary hearing on the issue of exhaustion of administrative remedies regarding the alleged May 19, 2008 use of pepper spray, the alleged conditions of confinement, the alleged May 19, 2008 phone call incident, and the failure to protect claim against Defendant DeVito.  Finally, the Court finds that Magistrate Judge Dancks correctly determined that the Court should deny Plaintiff's motion to strike.

## IV. CONCLUSION

After carefully considering Magistrate Judge Dancks' Report and Recommendations, the parties submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Dancks' September 10 and 13 Report and Recommendations (Dkt. Nos. 147 and 149) are **ADOPTED** in their entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendant Schiff's motion for summary judgment (Dkt. No. 122) is **GRANTED** and that the Clerk shall terminate him as a party in this action; and the Court further

**ORDERS** that Plaintiff's motion to strike (Dkt. No. 136) is **DENIED**; and the Court further

**ORDERS** that Defendant DeVito's motion for summary judgment (Dkt. No. 120) is **DENIED**; and the Court further

**ORDERS** that the Chenango County Defendants' motion for summary judgment (Dkt. No. 117) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules

**IT IS SO ORDERED.**

Dated: September 30, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge